IRON STREET CORP. *v.* UNEMPLOYMENT
COMPENSATION COMMISSION.

1. CONSTITUTIONAL LAW—CLASSIFICATION.

The Fourteenth Amendment to the Constitution of the United States is not violated by legislation which applies only to those persons falling within a specified class if it applies alike to all persons within such class and reasonable grounds exist for making a distinction between those who fall within such class and those who do not.

2. UNEMPLOYMENT COMPENSATION—EMPLOYING UNITS—ACTUAL CONTROL—CONSTITUTIONAL LAW.

Provision of unemployment compensation act that two or more employing units which were actually controlled by the same interests or where one unit actually controlled another employing unit should constitute but one employer, as that term was used in the act, was not arbitrary or unreasonable as such provision was necessary in order that the benefits of the act be not denied and its purposes frustrated as to many employees by reason of disintegrated ownership and control (U. S. Const. Am. 14; Act No. 1, § 41 [3], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

3. CONSTITUTIONAL LAW—RELATION BETWEEN CLASS LEGISLATION AND EVIL SOUGHT TO BE CONTROLLED.

A reasonable relationship between a statute legislating as to a particular class and the evil sought to be controlled brings the statute within the limits of constitutionality.

4. UNEMPLOYMENT COMPENSATION—DEFINITION OF EMPLOYER—AFFILIATE CLAUSE.

One of the purposes of the provision of the unemployment compensation act defining an "employer" for the purposes of the act as including all employing units owned or controlled directly or indirectly by the same interests as a single employing unit if the aggregate of employees is 8 or more during 20 weeks is to prevent employers from avoiding the obligation

of the statute by dividing their businesses and such classi-
fication has a fair relation to the primary object of the legis-
lation to relieve against the distress of unemployment (Act
No. 1, § 41 [c], Pub. Acts 1936 [Ex. Sess.], as amended by
Act No. 347, Pub. Acts 1937).

5. CONSTITUTIONAL LAW — TAXATION — CLASSIFICATION — PRESUMP-
TIONS.

. A legislature is not bound to tax every member of a class or
none but may make distinctions of degree having a rational
basis, and when subjected to judicial scrutiny, they must be
presumed to rest on that basis if there is any conceivable
state of facts which would support it.

6. STATUTES—CONSTRUCTION—IMPOSITION OF A TAX OR BURDEN.

When a statute imposing or enforcing a tax or other burden
on the citizen in behalf of the State is fairly susceptible of
more than one interpretation, the court will incline to the in-
terpretation most favorable to the citizen.

7. SAME—UNEMPLOYMENT COMPENSATION ACT—CONSTRUCTION.

The unemployment compensation act was enacted in the interest
of the public welfare in providing for assistance to the un-
employed and is entitled to receive a liberal interpretation
(Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended).

8. UNEMPLOYMENT COMPENSATION—CONSTRUCTION OF STATUTES—
DEFINITION OF EMPLOYER—AFFILIATES—CONTROL.

In construing clause in definition of employer in the unemploy-
ment compensation act relating to affiliated employing units
owned or controlled directly or indirectly by the same inter-
ests, the term "the power to control" means the same thing as
"control," the exercise of control being immaterial (Act
No. 1, § 41 [c], Pub. Acts 1936 [Ex. Sess.], as amended by
Act No. 347, Pub. Acts 1937)..

9. SAME—AFFILIATED EMPLOYERS—DUE PROCESS.

The affiliate clause in the section defining an employer in the
unemployment compensation act bears a real and substantial
relation to the object of alleviation of the evils of involuntary
unemployment, hence does not violate the guaranty of due
process (U. S. Const. Am. 14; Act No. 1, § 41 [c], Pub. Acts
1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

10. SAME—AFFILIATE CLAUSE—RELEVANT OR INCIDENTAL BUSINESS.

Where one or more of the employing units is a corporation and
the business conducted by either unit is relevant or incidental

to the business of the other, the several employing units must be deemed to come within the classification of the affiliate clause of the unemployment compensation act (Act No. 1, § 41 [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

11. Same—Tool and Die Corporation—Building Owner—Affiliated Employing Units.

Since it is within implied powers of tool and die corporation to acquire building in which it was located even though it may not presently have need of all of the building where owner of 51 per cent. of stock of such corporation owned all of the stock of the corporation owning the building in which the tool and die corporation and other tenants were located, the tool and die corporation and building owner are considered as an employing unit entitling an employee of the building owner, itself having fewer than 8 employees, to unemployment compensation where the other corporation has more than that number (Act No. 1, § 41 [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

12. Same—Construction of Statutes—Amendment—Disregard of Corporate Entity.

In construing the affiliate clause in the definition of employer in the unemployment compensation act, contention that, because of the amendment of 1941, legislature did not intend to disregard the corporate entity as the section stood before such amendment except in cases of attempted evasion of the tax *held,* unsound, since it is not essential to the enforcement of a tax act that the one against whom enforcement is sought be engaged in tax evasion although possibility that evasive practices may be perpetrated is sufficient justification for the classification made in the act; the controlling test as to meaning of a statute being the legislative intent at time of passage and not as expressed by a subsequent amendment (Act No. 1, § 41 [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and by Act No. 364, Pub. Acts 1941).

13. Costs—Public Question—Construction of Unemployment Compensation Act.

No costs are allowed in case involving construction of affiliate clause in definition of employer in unemployment compensation act, a public question being involved (Act No. 1, § 41 [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937).

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted April 16, 1943. (Docket No. 11, Calendar No. 42,060.) Decided June 7, 1943. Rehearing denied September 7, 1943.

Certiorari by Iron Street Corporation to review an order of the Unemployment Compensation Commission allowing compensation to John Nairn. Award reversed by circuit court. Defendant appeals. Reversed.

*Edgar W. Pugh* (*William C. Allee,* of counsel), for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Florence N. Clement,* Assistants Attorney General, for defendant.

BUSHNELL, J. John Nairn, an employee of the plaintiff, Iron Street Corporation, a Michigan corporation, was denied unemployment compensation benefits by the claims section of the Michigan unemployment compensation commission and allowed compensation by the referee. The appeal board sustained the award of the referee and its decision was based on the provisions of section 41 (3) of the Michigan unemployment compensation act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 8485–41 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 17.501 *et seq.*]), before it was amended by Act No. 364, Pub. Acts 1941. The decision of the appeal board was reviewed by certiorari in the circuit court where a judgment was entered in favor of Iron Street Corporation. This is an appeal by the commission from that judgment.

A written stipulation has been filed by the parties in which they agree that Arthur L. Evans at the

time in question owned at least 51 per cent. of the outstanding capital stock of the Modern Die & Tool Company, and 100 per cent. of the outstanding capital stock of the Iron Street Corporation. Both of these concerns are located at the same address in the city of Detroit, the first being engaged in the manufacture of tools and dies, and the second owns the building in which the Modern Die & Tool Company is a tenant, with others. The Iron Street Corporation has less than 8 employees, while the Modern Die & Tool Company employs more than that number.

The section of the compensation act involved reads as follows:

"SEC. 41. * * * 'Employer' means: * * *

"(3) Any employing unit which, together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforceable means or otherwise) and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (one) of this section."

The classification established by this provision of the act was determined to be reasonable, and the section was held to be constitutional in *Godsol* v. *Unemployment Compensation Commission,* 302 Mich. 652, 662 (142 A. L. R. 910). This court said:

"The 14th Amendment is not violated by legislation which applies only to those persons falling within a specified class if it applies alike to all persons within such class and reasonable grounds exist for making a distinction between those who fall within such class and those who do not. That the legislature saw fit to include within the terms of the act instances where two or more units were actually

controlled by the same interests or where one unit actually controlled another employing unit is not arbitrary nor unreasonable. On the contrary, such provision is necessary in order that the benefits of the act be not denied and the purposes of the act as a whole be not frustrated to many employees by reason of disintegrated ownership and control. A reasonable relationship between the statute and the evil sought to be controlled brings the statute within the limits of constitutionality.''

Appellee argues that our determination in the *Godsol Case* is not controlling in the instant case because the question of ''piercing the corporate veil'' was not there presented or considered. In arriving at our conclusion in the *Godsol Case,* we cited with approval and quoted from *Maine Unemployment Compensation Commission* v. *Androscoggin Junior, Inc.,* 137 Me. 154 (16 Atl. [2d] 252), and *New Haven Metal & Heating Supply Co.* v. *Danaher,* 128 Conn. 213 (21 Atl. [2d] 383). In each of these opinions appears a discussion of the problem of ''piercing the corporate veil'' under affiliate clauses similar to the one in our act. The court said in the *Maine Case,* p. 161:

''While it is true that a corporation is a separate entity from its stockholders, yet it is apparent that the legislature, when it enacted this statute, intended to go behind the corporate veil and discover actuality and if it were found that the company, although a corporation, were one so controlled, compel contribution. Otherwise, an individual intending to carry on a business of considerable magnitude, requiring the employment of many more than eight, could organize several corporations, each employing less than eight, escape contribution, and deprive many employees of the benefits intended by the act.''

Appellee insists that if the section of the statute in question is interpreted to include corporations, it is unconstitutional, and cites in support of this argument *Independent Gasoline Co.* v. *Bureau of Unemployment Compensation*, 190 Ga. 613 (10 S. E. [2d] 58), certiorari denied, 311 U. S. 707 (61 Sup. Ct. 175, 85 L. Ed. 459), and *Benner-Coryell Lumber Co.* v. *Indiana Unemployment Compensation Board*, 218 Ind. 20 (29 N. E. [2d] 776).

The Georgia court held that classifying two corporations as a single employing unit because the same person owns a majority of the outstanding capital stock in each would deny such corporations equal protection of the law, because competitors similarly situated and not connected with another business by majority stock ownership would be exempt from the provisions of the act. That court also said:

"It is contended, however, that the classification is justified as a means for enforcing the law and preventing its evasions. No doubt exists as to the right of the legislature to enact any legal provision that will prevent evasion and aid in the enforcement of a legal enactment. *Purity Extract & Tonic Co.* v. *Lynch*, 226 U. S. 192 (33 Sup. Ct. 44, 57 L. Ed. 184). But this rule should never sustain an act that places a burden upon innocent and helpless minority stockholders solely because of the status of the majority stockholder who might seek to evade his legitimate obligations under the statute."

The Indiana court, relying on the Georgia decision, held that the phrase in the affiliate clause "controlled directly or indirectly by the same interests" must always be carefully scrutinized, and that such language must be regarded as meaning "something more than that remote control" arising out of

ownership of a majority of voting stock. The answer to the first proposition advanced by the Georgia court is found in the statement of the Connecticut court in *New Haven Metal & Heating Co.* v. *Danaher, supra,* which was quoted in the *Godsol Case* and which, for the sake of emphasis, we repeat in part:

"The formula established by the statutory provision in question applies to all employers similarly situated, that is, to all employers whose businesses are under common ownership or control, the question is resolved to whether the classification has a fair and substantial relation to the object of the legislation. If it has, it is valid. If it has not, it is arbitrary, unreasonable and capricious, and therefore void. It is apparent from the plan embodied in the act as already stated that its primary object is to relieve against the distress of unemployment, and that the imposition of the tax upon employers is incidental."

As pointed out in the *Godsol Case,* one of the purposes of the section is to prevent employers from avoiding the obligations imposed by the statute, by dividing their businesses, and we stated there, and repeat now, that the classification thus imposed has a fair relation to the object of the legislation in question. The class created by statute includes employing units with less than 8 employees which are owned or controlled by other employing units or by the same interests which own or control another employing unit, which, if treated as a separate unit with such other unit or units, employs 8 or more. The tax that is imposed is levied equally upon all that come within this class. In *Carmichael* v. *Southern Coal & Coke Co.,* 301 U. S. 495, 509 (57 Sup. Ct.

868, 81 L. Ed. 1245, 109 A. L. R. 1327), the court said:

"A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny, they must be presumed to rest on that basis if there is any conceivable state of facts which would support it."

In the Maine case the court cited the *Carmichael Case* and said:

"While it is true 'that when a statute imposing or enforcing a tax or other burden on the citizen even in behalf of the State is fairly susceptible of more than one interpretation, the court will incline to the interpretation most favorable to the citizen' (*Millett* v. *Mullen,* 95 Me. 400, 415, 49 Atl. 871), yet we do not consider that this statute as attacked is 'fairly susceptible of more than one interpretation' so as to come within that principle of law. Besides, it may be regarded as enacted in the interest of the public welfare in providing for assistance to the unemployed and so be entitled to receive a liberal interpretation. 59 C. J. § 656, pp. 1105, 1106. Relief of unemployment is a public purpose."

This latter argument was used in the *Godsol Opinion.*

The Washington court, in *State of Washington* v. *Kitsap County Bank,* 10 Wash. (2d) 520 (117 Pac. [2d] 228), supplied the answer to the remaining argument in the Georgia case, and the one presented in the Indiana case, when it said:

"It might well be argued that, if the majority stockholder of a corporation seeks to evade his legitimate tax obligation under the statute, a minority stockholder cannot well complain if the corporation be brought within the scope of the law. Minority

stockholders frequently suffer in one way or another through the acts of the holders of the majority of the corporate stock, and in all such cases the hardship, be it great or small, is borne by all stockholders, whether belonging to the majority or the minority group. We cannot follow the reasoning of the Georgia court in its holding that a classification which would otherwise be valid, is unconstitutional, because some interests may be adversely affected thereby. Some persons may complain, and often with seeming reason, of every legislative classification, but dividing lines must be drawn somewhere, and the question is not whether there is in fact some discrimination, but rather whether the discrimination is justified. * * *

"The (Indiana) court held the law constitutional by construing the word control as importing something more than the mere ownership of a majority of corporate stock. Such a construction of the statute would render the administration of the law extremely difficult and complicated, as well as uncertain. The power of control unexercised would call for one classification, and a change of policy, including the exercise of the control, would require another. In view of the necessity for an established administrative policy, it would seem that the power of control, and control, should be held to mean the same thing."

Appellee's contention that the application of section 41 (3) constitutes a denial of due process was recently answered by the New Jersey court in *Wiley Motors, Inc.,* v. *Unemployment Compensation Commission,* 130 N. J. Law, 30 (31 Atl. [2d] 39), decided April 1, 1943, where a somewhat similar set of facts was presented under a like affiliate clause. That court said:

"The guaranty of due process demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real

and substantial relation to the object sought to be obtained. *Nebbia* v. *New York,* 291 U. S. 502 (54 Sup. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469). \* \* \* There can be no question but that the means selected bear a real and substantial relation to the objects sought to be obtained bearing in mind that that object is the alleviation of the evils of involuntary unemployment.''

See, also, *Warren Brokerage Co.* v. *Unemployment Compensation Commission,* 194 Miss. 855 (13 South. [2d] 227), decided April 26, 1943.

The authorities above referred to have held. that the affiliate clause was either applicable or inapplicable, without any qualification. The Missouri court, however, took an intermediate position in the case of *Kellogg* v. *Murphy,* 349 Mo. 1165, 1182 (164 S. W. [2d] 285), in which it said:

''We hold the affiliate clause, subsection (h) 4, should be construed to refer to businesses which by location, nature or common experience might not unreasonably be expected to operate under substantial unification in the absence of such a statute; and to those where there is evidence of actual unifications. \* \* \* But it is our conclusion that the two businesses involved in this case come within that rule—a general printing business and a newspaper publishing business conducted at the same address and under common major ownership. This is true although they were and previously had been operated as separate entities.''

We deem it of some importance to note the nature of the businesses in which the organizations in the foregoing cases were engaged. Those which held the affiliate clause inapplicable involved in the Georgia case a telephone corporation and a gasoline corporation, and in the Indiana case, two retail lumber corporations. Those cases which held affiliate

clauses applicable involved in the Maine case two boys' camps, one of which was a corporation; in the Washington case, two banking corporations; in the New Jersey case, a retail truck sale corporation and a manufacturing corporation; in the Connecticut case, a paint supply business and a plumbing supply corporation; in the Missouri case, a printing business and a publishing corporation; and in the Mississippi case, a commercial banking or sales finance corporation, and a personal loan brokerage corporation. It thus appears that, in the instances where the affiliate clause has been held to apply to a corporation, the businesses of the employing units have been somewhat related to each other.

We, therefore, hold that where one or more of the employing units in question is a corporation and the business conducted by either unit is relevant or incidental to the business of the other, the several employing units must be deemed to come within the classification of the affiliate clause, section 41 (3). In the instant case it is well within the implied powers of a tool and die corporation to acquire the building in which it is located even though it may not presently need all of it, and, while looking to the future expansion of its business, rents space therein to others. See *Dodge* v. *Ford Motor Co.,* 204 Mich. 459 (3 A. L. R. 413).

Appellee also contends that, because of the 1941 amendment to the act, we should construe the act before its amendment so as to hold that the legislature did not intend to disregard the corporate entity, except in cases of attempted tax evasion. We are not presently concerned with the 1941 amendment, but rather with the legislative intent as expressed in the act before its amendment. Appellee's argument is unsound in that it is not essential to the enforcement of a tax act that the one against

whom enforcement is sought be engaged in a tax evasion. However, the possibility that evasive practices may be perpetrated is, as pointed out in the Washington case, sufficient justification for the classification. The controlling test as to the meaning of a statutory provision is always the legislative intent when fairly ascertainable. But the "intent" referred to is the one entertained by the legislature at the time of the passage of the act, and not the intent expressed by a subsequent amendment. In the instant case, to interpret the subsequent amendment as an indication of the legislature's original intent would be mere speculation, not judicial construction.

Appellee also argues that in some of the cases cited there was an evident attempt to evade the effect of the statute. Whether such an intent in fact existed does not in any manner detract from the force of the reasoning and the logic of the conclusion reached in the authorities cited.

The judgment of the trial court is set aside and the cause remanded for the entry of a judgment sustaining the decision of the commission. It is so ordered, but without costs because of the public nature of the question involved.

BOYLES, C. J., and CHANDLER, NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred.

WIEST, J., concurred in the result.