(No. 27618.—

ZEHENDER & FACTOR, INC., *et al.*, Appellants, *vs.* FRANCIS B. MURPHY, Director of Labor, Appellee.

*Opinion filed March 21, 1944.*

WALTER F. CUNNINGHAM, (G. A. BURESH, of counsel,) both of Chicago, for appellants.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, and MARY V. NEFF, of counsel,) for appellee.

Mr. Justice Stone delivered the opinion of the court:

This cause is here on appeal from the judgment of the circuit court of Cook county quashing a writ of *certiorari* sued out by appellants to review the record of the Department of Labor which found contributions due from appellants under the Unemployment Compensation Act, as follows: Zehender & Factor, Inc., $1352.57; W. Zehender and F. G. Factor doing business as Zehender & Factor, $54.00; Zehender Pharmacy, Inc., $128.77.

The cause comes on through usual notice by the Department of Labor followed by protests of appellants that they were not employers or employing units within the purview of the Unemployment Compensation Act. (Ill. Rev. Stat. 1943, chap. 48, par. 218.) After hearing, appellants filed further objection that no showing was made that appellants employed the requisite number of employees; that no employee or former employee had ever applied for benefits, and that time for making such application had long since expired. It is also urged that the assessment was taking private property without due process of law, in violation of the constitution of the United States and that paragraph (5) of subsection (e) of section 2 of the act is unconstitutional and void. The court held valid the provision of the act questioned, quashed the writ of *certiorari* and entered the judgments against appellants in the sums indicated.

It appears from the record that Zehender Pharmacy, Inc., was incorporated in 1932 and operated a drugstore until 1937, when the business was sold to one W. Stengle. The corporation was dissolved in 1938 and distribution was made to stockholders, as follows: W. Zehender 219 shares, Fred Factor 219 shares, Gilbert Keebler 300 shares, a Mr. Kozak 10 shares, and the wives of Zehender and Factor each one share. In 1937 the corporation had two employees. Zehender & Factor, Inc., was incorporated in December, 1928, as Thesen & Zehender, Inc., and its

name was changed to Zehender & Factor, Inc., in July, 1937. This corporation operated a drugstore until 1939 when W. Zehender and F. G. Factor took over the business and operated it as a copartnership. The corporation was dissolved December 30, 1939. In 1937 the corporation had an authorized capital stock of 200 shares, of which Zehender owned 100 shares, Factor 99 shares and Factor's brother one share.

It is argued here (1) that the Unemployment Compensation Act levies taxes and must be strictly construed as other tax statutes and (2) that the act is unconstitutional in its entirety as being in violation of various sections enumerated; that subsection 2(e)(5) is void in that it violates section 2 of article II and sections 1 and 2 of article IX of the Illinois constitution and the fifth and fourteenth amendments to the constitution of the United States. Appellants' counsel seek to argue in their briefs the invalidity of various sections of the statute. It appears from the record, however, that the only section as to which a constitutional question was raised in the trial court, and passed upon by it, was subsection 2(e)(5). It has been many times held by this court that the question of the constitutionality of a statute cannot be properly raised for the first time in this court, but must have been called to the attention of the trial court and ruled upon by it, and the person challenging its validity must have preserved proper exceptions to such rulings. (*McNeil & Higgins Co.* v. *Neenah Co.* 290 Ill. 449; *Moses* v. *Royal Indemnity Co.* 276 Ill. 177, *Cummings* v. *People,* 211 Ill. 392.) Assignments of error must be based upon the record itself and not merely upon arguments of counsel or upon the fact that the question might have been raised in the pleadings or during the trial. *City of Sullivan* v. *Central Illinois Public Service Co.* 287 Ill. 19; *People* v. *Cannon,* 236 Ill. 179.

The record in this case shows that subsection 2(e)(5) was the only section of the statute attacked on constitu-

tional grounds in the trial court or passed upon by that court. Appellants argue that they are endeavoring to demonstrate the invalidity of the entire act in order to show that subsection 2(e)(5) is invalid. We are not impressed with that type of argument. If they had desired to challenge the validity of other sections of the act, they could very readily have done so, but can scarcely hope at this time to bring before the court their objections to sections of the act which were not objected to and passed upon in the court below.

Subsection 2(e)(5) declares an employer to be: "Any employing unit which together with one or more other employing units, is owned or controlled, directly or indirectly, by legally enforceable means or otherwise, by the same interests, or which owns or controls one or more other employing units directly or indirectly, by legally enforceable means or otherwise, and which if treated as a single unit with such other employing units or interests or both would be an employer under paragraph (1) of this subsection." Appellants contend that the act is a taxing statute and therefore all parts are to be strictly construed in favor of the taxpayer. If the act is a taxing statute, authorities cited by appellants, holding that such acts are to be construed strictly, are in point. Cooley in his work on Taxation, volume 1-2, defines taxes as "the enforced personal contributions of persons and property, levied by the authority of the state, for the support of the government and for all public needs. They are the property of the citizen, demanded and received by the government, to be disposed of to enable it to carry into effect its mandates and discharge its manifold functions." The Unemployment Compensation Act declares its policy and moving purpose to be to alleviate the evils flowing from widespread unemployment and to provide benefits to those workers coming within the act as at least a partial reimbursement for loss of income during periods of unem-

ployment. Section 23(a) of the act (Ill. Rev. Stat. 1943, chap. 48, par. 240,) provides that the money collected under the act shall be kept separate and apart from all public monies of the State by the State Treasurer, who is made the custodian thereof, and that the act shall be administered by the Director of Labor exclusively for the purpose of the act. In *Oak Woods Cemetery Ass'n* v. *Murphy*, 383 Ill. 301, this court declared this statute to be an exertion of the police power of the State, holding that relief of unemployment is a public purpose and that the act is remedial. On this same principle it has been held that acts which may be regarded as enacted in the interest of public welfare and providing for assistance of the unemployed, are entitled to receive liberal interpretation. (*Maine Unemp. Comp. Com.* v. *Androscoggin*, 137 Me. 154, 16 Atl. 2d 252; *New Haven Metal & Heating Co.* v. *Danaher*, 128 Conn. 213, 21 Atl. 2d 383; *Young* v. *Bureau of Unemp. Comp.* 63 Ga. App. 130, 10 S. E. 2d 412; *Singer Sewing Machine Co.* v. *State Unemp. Comp. Com.* 167 Ore. 142, 116 Pac. 2d 744.) Illinois remedial legislation has heretofore been regarded as entitled to liberal construction even though it requires involuntary contributions to maintain it. *Grand Trunk Western Railway Co.* v. *Industrial Com.* 291 Ill. 167; *Chicago, Wilmington & Vermilion Coal Co.* v. *People,* 181 Ill. 270; *Consolidated Coal Co.* v. *Illinois,* 185 U. S. 203, 46 L. ed. 872.

While we are not inclined to quibble over the distinction between contributions and the assessment of payments, we are of the opinion that the amounts required to be paid do not come within the classification of general taxation, and that the statute is not a taxing statute and is entitled to liberal construction to the end that its purposes may be met.

It is next contended that subsection 2(e)(5) is indefinite in that it does not refer to any generally accepted body of precedents, standards of conduct or grounds of common

knowledge or understanding upon which it may be based, and specifically that the act does not define the meaning of the terms "controlled, directly or indirectly," or "legally enforceable means or otherwise," or "by the same interests." It is also argued that contributions assessed by the Director, which have developed into judgments entered by the court against appellants are not based on the amount of property which each corporation owns, nor the number of shares of stock, nor on the nature of business conducted, nor on the number of employees of each separate corporation, but that each corporation is assessed because the combined employees of two independent corporations are equal to the number of employees required to bring an employer under the statute, and this because each corporation is owned by certain individuals, while other corporations employing an equal total number of persons are not taxed because their stock is owned by different individuals. Appellants' counsel argue that each corporation is an entity and, under the constitution, is each a person and entitled to equal protection of the laws with other corporations of like nature and employing the same number of persons. It is said corporations have no control over their stockholders, they have no right to say who shall and who shall not own their stock and that, therefore, when assessed as employers under subsection 2(e)(5) they are being denied equal protection of the laws.

In support of this contention they rely principally upon two cases, *Independent Gasoline Co.* v. *Bureau of Unemployment Compensation,* 190 Ga. 613, 10 S. E. 2d 58, and *Benner-Coryell Lumber Co. Inc.* v. *Indiana Unemp. Comp. Board,* 218 Ind. 20, 29 N. E. 2d 776. These cases hold similar acts invalid on the ground that they contravene the constitutional requirement of equal protection of the laws. As against these two authorities, some seventeen courts of jurisdictions outside of Illinois have passed upon this or similar language, holding it valid. In *Handy & Harmon*

v. *Burnet*, 284 U. S. 136, the court, in discussing the meaning of "substantially all of the stock of two or more corporations is owned or controlled by the same interests," as that language is used in the Federal Internal Revenue Act of 1918, said: "The purpose of Section 240 was, by means of consolidated returns, to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise, even though it was conducted by means of more than one corporation."

The language of subsection 2(e)(5) of this act has been sustained upon the theory that it establishes a classification of employers calculated to effect a valid legislative purpose, and also rests upon a reasonable ground of distinction; that, further, it is calculated to put into effect the purpose to alleviate widespread unemployment, and in so doing it also prevents decentralization of business enterprises brought about to escape contributions by increasing the number of business concerns and so keeping the number of employees below that specified in the act. It has been the general concensus of the decisions, supporting acts identical with or similar to this act, that the classification rests upon a reasonable ground of distinction, since it distinguishes between employers according to the size of the business enterprise in which those in control are engaged, where controlled by the same interests. See *New Haven Metal & Heating Co.* v. *Danaher*, 128 Conn. 213, 21 Atl. 2d 383; *Florida Ind. Com.* v. *Gary-Lockhart Drug Co.* 143 Fla. 293, 196 So. 845; *Mt. Vernon Bank & Trust Co.* v. *Iowa Employment Security Com.* (Iowa, 1943,) 11 N. W. 2d 402; *Maine Unemp. Comp. Com.* v. *Androscoggin*, 137 Me. 154, 16 Atl. 2d 252; *Iron Street Corp.* v. *Michigan Unemp. Comp. Com.* 305 Mich. 643, 9 N. W. 2d 874; *Warren Brokerage Co., Inc.* v. *Mississippi Unemp. Comp. Com.* 13 So. 2d (Miss.) 227; *Krisman* v. *Unemp. Comp. Com.* 171 S. W. 2d (Mo.) 575; *Unemp. Comp.*

*Com.* v. *City Ice & Coal Co.* 216 N. C. 6, 3 S. E. 2d 290; *Unemp. Comp. Co.* v. *Willis Barber & Beauty Shop,* 219 N. C. 709, 15 S. E. 2d 4; *Wiley Motors, Inc.,* v. *Unemp. Comp. Com.* 130 N. J. L. 30, 31 Atl. 2d. 39; *Gibson Products Co.* v. *Murphy,* 186 Okla. 714, 100 Pac. 2d. 453; *Jack Ulmer, Inc.,* v. *Daniel,* 193 S. C. 193, 7 S. E. 2d 829; *Witherspoon Oil Co.* v. *State,* 156 S. W. 2d (Tex.) 579; *Washington* v. *Kitsap County Bank,* 10 Wash. 2d 520, 117 Pac. 2d 228.

The case last cited contains a full exposition of the principles applicable in cases of this character. There the two appellant corporations were the First National Bank of Poulsbo and the Kitsap County Bank, in each of which institutions the same person was the majority stockholder. There was no business connection or affiliation between the banks except indirectly through the majority stockholder which each had in common. Thus the facts there presented a case in all material respects similar to the one before us. The section similar to subsection 2(e)(5) was attacked on the ground that it was arbitrary and discriminatory and deprived the appellant banks of equal protection of the laws. It was held, however, citing authorities, that it rested upon reasonable grounds of distinction calculated to effect a valid legislative purpose. The Georgia and Indiana cases were considered.

We are of the opinion that not only is the great weight of authority in this country contrary to appellants' contentions, but that they present a reasonable construction of the language. But quite apart from that, the language "owned or controlled by the same interests" has gained, as a result of long usage and frequent construction in Federal statutes and cases, an intrinsic meaning sufficient to inform any citizen or administrative officer of the legislative intent. That language governing administrative action must be definite in order to avoid the objection that it bestows legislative or judicial discretion upon officials, is

well recognized. But it is likewise the rule that as require-
ments of a statute can be stated only in general terms, a
reasonable discretion is reposed in officials charged with
its enforcement. See *Investors Syndicate of America, Inc.,
v. Hughes,* 378 Ill. 413, and cases therein cited.

In *State Board of Tax Comrs.* v. *Jackson,* 283 U. S.
527, 75 L. ed. 1248, the question of discriminatory classi-
fication arose. It was there held, citing cases, that the fact
that a statute discriminates in favor of a certain class, does
not make it arbitrary if the discrimination is founded upon
reasonable distinctions, or if any state of facts reasonably
can be conceived to sustain it. It is also there said: "A
very wide discretion must be conceded to the legislative
power of the state in the classification of trades, callings,
businesses or occupations which may be subjected to special
forms of regulation or taxation through an excise or
license tax. If the selection or classification is neither
capricious nor arbitrary, and rests upon some reasonable
consideration of difference or policy, there is no denial of
the equal protection of the law."

We are of the opinion that, as applied to facts in this
case, subsection 2(e)(5) is valid. It appears that, as to
Zehender & Factor, Inc., up to the time it was dissolved
and the business continued by Zehender and Factor as a
partnership, each owned the stock in equal amounts and
personally managed the business. Zehender Pharmacy,
Inc., in 1927 owned and operated a drugstore in Oak
Park. Zehender and Factor each owned 219 shares, their
wives each one share, Kozak, manager of the store, 10
shares, and Gilbert Keebler, the landlord, was holding 300
shares as security for back rent. The evidence is clear
Keebler had nothing to do with the transaction of the busi-
ness or the control of the corporation. Neither of these
two corporations had sufficient employees to come within
the act, but when considered as one unit, had more than

the requisite eight employees during more than twenty weeks of the year 1937, covered by this case.

Appellants argue that eliminating Zehender and Factor as employees, the combined number of employees of the two appellant corporations is but seven, therefore the Director of Labor and the trial court erred in finding any contribution due. This contention does not appear to be borne out by the record. Zehender testified that Zehender Pharmacy, Inc., had four employees and sometimes five, and that Zehender & Factor, Inc., had seven, in some weeks eight, though not for twenty weeks of the year. It is readily seen that even excluding Zehender and Factor, the two concerns have a sufficient number of employees to bring them within the act.

It is also contended that the Director and the court were without power to enter findings against Zehender Pharmacy, Inc., as the corporation was dissolved more than two years before the proceedings were instituted. It appears that separate findings and judgments were entered against each appellant, therefore only Zehender Pharmacy, Inc., can complain. It is said that that concern was dissolved prior to the institution of these proceedings. It was not then in existence. So far as the abstract shows, however, the nonexistence of Zehender Pharmacy, Inc., was not raised before the Director, but, on the other hand, that corporation filed a protest against the findings of the Director and a petition for a hearing. At that hearing no claim was made of the nonexistence of the corporation. The record shows that it appeared at all the hearings, sued out a writ of *certiorari* to review the record of the Director of Labor, and, after judgment, became one of the appellants who appealed. The question here sought to be raised may not be for the first time raised in this court.

We find no error in the record and the judgments of the circuit court are affirmed.

*Judgments affirmed.*