REINELT v PUBLIC SCHOOL EMPLOYEES' RETIREMENT
BOARD

Docket No. 77-5028. Submitted November 15, 1978, at Lansing.—
Decided January 3, 1979. Leave to appeal applied for.

Charles Reinelt retired from his teaching position after having
taught continously in Michigan schools for nearly 40 years,
except for a period from 1942 to 1946 when he enlisted in the
United States Navy. The Public School Employees' Retirement
Board granted Reinelt credit for the time spent on active duty
with the Navy. The board, however, denied credit for a period
of approximately six months during which Reinelt was enrolled
in college, after his enlistment but prior to his entering active
duty, as a part of an officer training program. Reinelt pe-
titioned for review of the retirement board's decision, and the
Ingham Circuit Court, Ray C. Hotchkiss, J., affirmed the board.
Reinelt appeals. *Held:*

The statute which was in effect at the time of Reinelt's
retirement and which provided for credit for time served in the
armed forces was intended to provide retirement credit for the
time during which members of the retirement system were
unable to continue their school employment because of a con-
flicting obligation to serve in the armed forces. Therefore,
Reinelt, who had such an obligation to the armed forces, should
be allowed the credit for the time he spent in preparation for
his active service, without regard to whether he was on active
or inactive duty during that time. An Attorney General's
opinion to the contrary is not binding on the Court.

Reversed.

CYNAR, P.J., dissented. He would hold that the statute re-
quired that a person be on active duty before becoming eligible
for the retirement credit.

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 142, 145.

[2] 7 Am Jur 2d, Attorney General § 8.

[3] 73 Am Jur 2d, Statutes §§ 2, 343.

[4] 73 Am Jur 2d, Statutes § 145.

[5, 6] 60 Am Jur 2d, Pensions and Retirement Funds §§ 20, 27, 42.

OPINION OF THE COURT

1. STATUTES—CONSTRUCTION OF STATUTES—COURTS—APPEAL AND ER-
   ROR.

   The construction given to a statute by those charged with the
   duty of executing it is always entitled to the most respectful
   consideration by the courts and ought not to be overruled
   without cogent reasons.

2. COURTS—COURT OF APPEALS—ATTORNEY GENERAL'S OPINIONS.

   The Court of Appeals is not obligated to follow an opinion of the
   Attorney General.

3. STATUTES—CONSTRUCTION OF STATUTES—AMENDMENTS.

   Generally, an amendment to a statute is to be construed as
   changing the meaning of the statute unless a different intent is
   manifest.

4. STATUTES—CONSTRUCTION OF STATUTES—INTENT OF LEGISLATURE.

   The primary rule of statutory construction is to ascertain and
   give effect to the intention of the Legislature; the intent is the
   one entertained by the Legislature at the time of the passage of
   the act under consideration, and not the intent expressed by a
   subsequent amendment.

5. STATUTES—SCHOOL EMPLOYEES' RETIREMENT SYSTEM—MILITARY
   SERVICE CREDIT—ACTIVE DUTY—INACTIVE DUTY.

   A statute which provided retirement credit for time served in the
   military by a teacher whose teaching career was interrupted by
   that military service was intended to provide the credit where
   the teacher was unable to continue teaching because of a
   conflicting obligation to serve in the armed forces; therefore, no
   distinction is to be made between active and inactive duty in a
   case where a teacher enlisted during wartime in a program
   which required him to attend college at his own expense in
   preparation for entering active duty as a naval officer (MCL
   38.214; MSA 15.893[14]).

DISSENT BY CYNAR, P.J.

6. STATUTES—SCHOOL EMPLOYEES' RETIREMENT SYSTEM—MILITARY
   SERVICE CREDIT—ACTIVE DUTY—INACTIVE DUTY.

   *A member of the school employees' retirement system is entitled
   to credit for time spent in the armed forces, but only to that
   time spent in* active *service; therefore, a teacher who enlisted
   in a program in which he was required to attend college at his*

*own expense in preparation for entering active service as a naval officer is not entitled to credit for the time between his enlistment and the time he entered active duty.*

*Foster, Swift, Collins & Coey, P.C.* (by *Arthur R. Przybylowicz* and *James A. White*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F. Young, Mary Kay Bottecelli* and *Richard P. Gartner,* Assistants Attorney General, for defendant.

Before: CYNAR, P.J., and R. B. BURNS and M. B. BREIGHNER,* JJ.

R. B. BURNS, J. Plaintiff Reinelt appeals from a circuit court affirmance of a decision by defendant Michigan Public School Employees' Retirement Board denying plaintiff additional military service credit in the computation of plaintiff's retirement benefits. We reverse.

Plaintiff left his employment as a school teacher to enlist in the Navy on August 21, 1942. Upon enlistment, plaintiff was placed in the Navy's V-7 program, under which he attended Michigan State Normal College at his own expense, taking courses to prepare him to become an officer. At that time he had a military serial number, rank, commanding officer, and was exempt from military draft. However, he was not paid by the Navy, not required to wear a uniform, did not live in Navy barracks, and did not receive a housing subsidy. On March 9, 1943, he entered active duty in the Navy. Plaintiff's active duty ended March 28, 1946, and he immediately resumed teaching in Michigan schools. Plaintiff retired July 1, 1974.

In computing plaintiff's retirement benefits, de-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

fendant allowed military service credit only for the
period of March 9, 1943, to March 28, 1946.

At the time of plaintiff's retirement, 1972 PA
170; MCL 38.214; MSA 15.893(14), provided in
part:

"A member of this retirement system who was or
shall be drafted, enlisted, inducted, or commissioned
into military, naval, marine or other armed service of
the United States government during time of war or
emergency, or who shall be drafted or called into such
armed service or emergency during time of peace, and
within 24 months from the date of his honorable dis-
charge or relief from active duty from such armed
service shall resume employment as a public school
employee, shall receive a maximum of 6 years of credit,
except required service extending beyond 6 years, for
time spent in such armed service credited to him as a
member of the retirement system."

The statute is ambiguous as to how "time spent
in such armed service" shall be calculated. Plain-
tiff argues that the time period starts to run as of
the time of draft or enlistment. Defendant argues
that the reference in the statute to "relief from
active duty" implies that only time spent on active
duty is "time spent in such armed service".

The precise issue raised in this case was ad-
dressed by the Attorney General in a letter opin-
ion to Norvel A. Hansen, Executive Director of the
Michigan Public School Employees' Retirement
System, dated February 3, 1975. In that opinion
the Attorney General reasoned:

"A member of the Public School Employees Retire-
ment System cannot earn service credit pursuant to
MCLA 38.214; MSA 15.893(14) unless he or she returns
to public school employment 'within 24 months from
the date of his honorable discharge or relief from active

duty from such armed service.' Thus, a member is not entitled to such service credit until he or she first enters, and then honorably leaves, active duty in the armed services.

"Further, MCLA 38.214; MSA 15.893(14) grants service credit only 'for time spent in such armed service.' Since such 'time' ends when the member is honorably discharged from active duty, it must, to be consistent, begin when the member enters active duty.

"It is, therefore my opinion that a member is not entitled to military service credit under MCLA 38.214; MSA 15.893(14) until he or she enters active duty in the Armed Forces."

The statute was subsequently amended to provide in part:

"A member of this retirement system who was or shall be drafted, enlisted, inducted, or commissioned *into active duty* with the military, naval, marine, or other armed service * * * ." 1976 PA 357; MCL 38.214; MSA 15.893(14). (Emphasis supplied.)

This amendment appears to have been intended to clear up the instant ambiguity by adopting the Attorney General's interpretation and expressing that meaning with clarity.

Defendant asserts that this Court must give great weight to the Attorney General's administrative interpretation of the statute. See, *e.g., Magreta v Ambassador Steel Co (On Rehearing),* 380 Mich 513, 519; 158 NW2d 473, 475 (1968). It is true that

" '[t]he construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.' " *Magreta v Ambassador Steel Co, supra,* quoting *United States v Moore,* 95 US 760, 763; 24 L Ed 588, 589 (1877).

The rationale for this rule is that administrative agencies generally have special competence in interpreting and applying specialized legislation in their field of expertise. See 2A Sutherland, Statutory Construction (4th ed), § 49.05, pp 238, 239. Since the instant interpretation comes not from the agency charged with the duty of executing the statute, defendant board, but from the Attorney General, the rule and its rationale are inapplicable. This Court is not required to follow the opinion of the Attorney General. *Traverse City School Dist v Attorney General,* 384 Mich 390, 410 fn 2; 185 NW2d 9, 17 (1971). *Garcia v City of Warren Civil Service Comm,* 78 Mich App 603, 608; 261 NW2d 19, 22 (1977), *David Walcott Kendall Memorial School v Grand Rapids,* 11 Mich App 231, 237; 160 NW2d 778, 781 (1968). Instead, we accept the opinion of the Attorney General as expressing one of two possible, reasonable interpretations, but do not view the reasoning of the opinion as compelling.

Defendant also contends that the subsequent amendment of the statute to conform to the Attorney General's interpretation of the old statute reflects a legislative intention to clarify the ambiguity by making explicit the Legislature's prior intent. The difficulty with this argument is that we cannot know whether the change was intended by the Legislature to be one of form or substance. Generally, an amendment is to be construed, unless a different intent is manifest, as changing the meaning of the statute. *Bonifas-Gorman Lumber Co v Unemployment Compensation Comm,* 313 Mich 363, 369; 21 NW2d 163, 165 (1946). Thus, one inference which may be drawn from the amendment is that the Legislature viewed the prior statute as having the meaning advanced by plain-

tiff, and changed the meaning to that advanced by defendant. On the other hand,

" '[i]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change.' " *Detroit Edison Co v Dep't of Revenue,* 320 Mich 506, 520; 31 NW2d 809, 816 (1948), quoting 1 Sutherland, Statutory Construction (3d ed), § 1931, p 418, see *Detroit Edison Co v Janosz,* 350 Mich 606, 613–614; 87 NW2d 126, 130 (1957).

Thus, we may also infer that the Attorney General's opinion was in response to a controversy concerning the correct interpretation of the statute, and the Legislature reacted thereto by making clear its prior intent.

Whatever might have been the understanding of the Legislature as to the prior meaning of the statute, that understanding would only be evidence to aid in our interpretation, and not dispositive.

"The controlling test as to the meaning of a statutory provision is always the legislative intent when fairly ascertainable. But the 'intent' referred to is the one entertained by the legislature at the time of the passage of the act, and not the intent expressed by a subsequent amendment. In the instant case, to interpret the subsequent amendment as an indication of the legislature's original intent would be mere speculation, not judicial construction." *Iron Street Corp v Unemployment Compensation Comm,* 305 Mich 643, 655; 9 NW2d 874, 879 (1943), *Detroit Edison Co v Dep't of Revenue, supra,* at 519; 31 NW2d at 815.

The primary rule of statutory construction,

"is to ascertain and give effect to the intention of the legislature. All [other rules] serve but as guides to assist the courts in determining such intent with greater degree of certainty". *Grand Rapids v Crocker*, 219 Mich 178, 182; 189 NW 221, 222 (1922).

Having determined that extrinsic aids to interpretation do not provide a dispositive answer to the instant issue, we turn to the words of the statute itself.

The intention of the Legislature is manifest. The purpose of the statute is to provide retirement credit for that time during which members of the retirement system were unable to continue their school employment because of a conflicting obligation to serve their country in the armed forces. Ordinarily that obligation would conflict with a teaching career at the time of draft or enlistment, and we may infer that the Legislature assumed without expressly considering that draft or enlistment would automatically lead immediately to active duty. We decline to write into the statute a distinction not then made by the Legislature, which would be essentially arbitrary and thwart the general purpose of the statute in cases such as this. Upon plaintiff's enlistment, he was obligated to serve his country in a capacity which interrupted his teaching career. His sacrifice was no less than it would have been had he first been placed on active duty and then sent to school. We are certain that, had the Legislature expressly considered this type of situation, it would have drawn the statute in such a manner as to make clear its intention to allow the credit.

Reversed. No costs, public question.

M. B. BREIGHNER, J., concurred.

CYNAR, P.J. *(dissenting).* In a February 3, 1975, letter opinion to Norvel Hansen, the Attorney General stated:

"A member of the Public School Employees Retirement System cannot earn service credit pursuant to MCLA 38.214; MSA 15.893(14) unless he or she returns to public school employment 'within 24 months from the date of his honorable discharge or relief from active duty from such armed service.' Thus, a member is not entitled to such service credit until he or she first enters, and then honorably leaves, active duty in the armed services.

"Further, MCLA 38.214; MSA 15.893(14) grants service credit only 'for time spent in such armed service.' Since such 'time' ends when the member is honorably discharged from active duty, it must, to be consistent, begin when the member enters active duty.

"It is, therefore my opinion that a member is not entitled to military service credit under MCLA 38.214; MSA 15.893(14) until he or she enters active duty in the Armed Forces."

I find this analysis more persuasive and adopt it as my own. Therefore, I would affirm the decision of the trial judge.