*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY, formerly known as
DEPARTMENT OF TALENT AND ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

UNPUBLISHED
July 30, 2020

Appellee,

v

No. 347897
Wayne Circuit Court
LC No. 18-008087-AE

JCE ACQUISITIONS, LLC,

Appellant.

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Appellant, JCE Acquisitions, LLC (JCE), appeals by delayed leave granted[1] the trial court's order reversing a Michigan Compensation Appellate Commission (MCAC) decision and reinstating a determination by appellee, Department of Labor and Economic Opportunity/Unemployment Insurance Agency (the Agency), to merge JCE and several additional entities into a single employing unit for purposes of unemployment insurance taxes. For the following reasons, we reverse the trial court's order and reinstate the decisions of the administrative law judge (ALJ) and MCAC.

## I. FACTS & PROCEDURAL HISTORY

This case arises from the Agency's determination that eight limited liability companies owned by Justin Buccellato were a single employer unit for purposes of unemployment insurance taxes. Each of the entities at issue operates a separate Subway restaurant. When each entity

---

[1] *Dept of Talent and Economic Dev v JCE Acquisitions LLC*, unpublished order of the Court of Appeals, entered July 3, 2019 (Docket No. 347897).

-1-

registered for unemployment taxes, it identified the nature of its business as a "limited service restaurant" and "food and beverage," and provided Buccellato's mailing address, e-mail address, and phone number as the entity's primary contact information.

The Agency issued a letter to JCE stating that it had completed a review of the accounts for JCE, Rencen, Kelly, Mack Ave, GPW, Groesbeck, Hall Road, and 23 Mile and determined that all eight entities would be merged into a single employer unit under JCE's account for purposes of unemployment insurance. In support of its decision, the Agency indicated that "[t]he aforementioned entities are all liable employers engaged in the same business activity, and are all commonly owned, managed, and/or controlled by Jason [sic] Buccellato." JCE protested the determination in writing. The Agency initially denied JCE's request for reconsideration because of JCE's untimely response to a request for information, but later elected to reconsider the denial "due to the discovery of an administrative error" and affirmed its earlier decision.

JCE protested this decision again and the matter was submitted to an ALJ who reversed the Agency's decisions. The Agency appealed to the MCAC which affirmed the ALJ's decision, stating only that the ALJ's findings were consistent with the evidence and that the ALJ properly applied the law. The Agency then appealed to the circuit court which reversed the MCAC's decision because it was contrary to law and not supported by the record evidence, and reinstated the Agency's decision to merge the entities. This appeal followed.

## II. STANDARDS OF REVIEW

"[A] circuit court must affirm a decision of the ALJ and the MCAC if it conforms to the law, and if competent, material, and substantial evidence supports it." *Hodge v US Security Assoc, Inc*, 497 Mich 189, 193; 859 NW2d 683 (2015). Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence. *Vanzandt v State Employees' Retirement Sys*, 266 Mich App 579, 584; 701 NW2d 214 (2005). An agency decision should be reversed if it based on erroneous legal reasoning or an improper legal framework. *Omian v Chrysler Group LLC*, 309 Mich App 297, 306; 869 NW2d 625 (2015).

We review a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clear-error standard of review. *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 431; 906 NW2d 482 (2017). A finding is clearly erroneous where, after reviewing the record, we are left with the definite and firm conviction that a mistake has been made. *Id*. at 431-432.

Associated issues involving statutory interpretation are reviewed de novo as questions of law. *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 146; 809 NW2d 444 (2011). Our role in construing statutory language is to discern and ascertain the intent of the Legislature, and we focus on the express language of the statute because it offers the most reliable evidence of legislative intent. *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). When statutory language is clear and unambiguous, we must apply the statute as written. *Id.* We are not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature, and we may not rewrite the plain statutory

language nor substitute our own policy decisions for those decisions already made by the Legislature. *Id*. at 212-213.

## III. ANALYSIS

JCE argues that the trial court committed error requiring reversal by misinterpreting relevant caselaw and concluding that each of Buccellato's entities could be considered a single employing unit on the basis of language that is absent from the statute. We agree.

MCL 421.40 provides:

"Employing unit" means any individual or type of organization, including, but not limited to, a governmental entity as defined in section 50a, a partnership, association, trust, estate, joint-stock company, insurance company or corporation . . . which has or . . . had in its employ 1 or more individuals performing services for it within this state. *All individuals performing services within this state for any employing unit which maintains 2 or more separate establishments within this state shall be considered to be employed by a single employing unit for all the purposes of this act*. [MCL 421.40 (emphasis added).]

The first sentence of § 40 defines "employing units," [2] and includes "any individual or type of organization" that employed one or more individuals to perform services in this state. The statute's reference to an "individual" does not include Buccellato because he did not, in his personal capacity, employ any of the workers that staffed the Subway locations. Rather, the workers at each location were employed by the entity that owned the respective location, and the certified public accountant for the eight entities testified that there was no intermingling of employees among the various locations and entities. Because Buccellato's entities employed the workers, only those entities are properly characterized as employing units under § 40.

The second sentence of § 40 provides that employees who work for "any employing unit which maintains 2 or more separate establishments within this state shall be considered to be employed by a single employing unit for all the purposes of this act." The statute does not define "establishment," and we therefore consult a dictionary to ascertain its common meaning. *In re Estate of Erwin*, 503 Mich 1, 10; 921 NW2d 308 (2018), as mod on reh (Oct 5, 2018). Merriam-Webster's Collegiate Dictionary (11th ed) defines "establishment" as "a place of business or residence with its furnishings and staff." If there was evidence presented that JCE, for example, maintained more than one Subway location, or perhaps conducted its administrative business matters outside of the physical location of the restaurant it operated, the employees who performed services at each physical place of business would still be employed by a single employing unit— JCE—under § 40. However, nothing in this sentence, standing alone or read together with the first sentence permits the Agency to treat workers who are employed by legally distinct entities as

---

[2] The Michigan Employment Security Act (MESA), MCL 421.1 *et. seq*., provides that, "[a]s used in the Act, unless the context clearly requires otherwise, the terms defined in the Act must be construed to have the meaning as prescribed and set forth in the several definitions." MCL 421.39.

though they are employed by a single employing unit—regardless of whether several entities are controlled by a common owner.

The circuit court held that the Buccellato's eight entities should be considered a single employing unit because each Subway location was commonly owned by Buccellato and engaged in the same type of business. We disagree with this factual finding because, although Buccellato, as an LLC shareholder, may have had control over each location, each of the eight locations was owned by a different, distinct legal entity.

Additionally, the circuit court held that the combined effect of §§ 40 and 41 allowed consolidation of those entities. Section 41[3] defines an "employer" by reference to individuals, legal entities, and employing units that meet certain specifications, and provides:

> (1) An employing unit that in each of 20 different calendar weeks within a calendar year, whether or not the weeks were consecutive, has or had in employment 1 or more individuals irrespective of whether the same individual was employed in each week, or by which total remuneration of $1,000.00 or more for employment was paid or payable within the calendar year.
>
> (2)(a) Any individual, legal entity, or employing unit that acquires the organization, trade, or business, or 75% or more of the assets of another organization, trade, or business, which at the time of the acquisition was an employer subject to this act.
>
> (b) Any individual, legal entity, or employing unit that becomes a transferee of business assets by any means otherwise than in the ordinary course of trade from an employer, if there is substantially common ownership, management, or control of the transferor and transferee at the time of transfer. [MCL 421.41(1) and (2).]

Under Subsection (1), an employing unit is considered an "employer" if it employs one or more individuals for the specified period or issued compensation valued at $1,000 or more for personal services. See also MCL 421.44(1) (defining remuneration). This does not provide a basis for merging each of the entities owned by Buccellato into a single employing unit. Subsections (2)(a) and (b) address instances when the potential "employer" acquired an organization, trade, business, or assets from an entity designated as an "employer." Although Subsection (2)(b) refers to common ownership, management, or control, the Agency did not base its decision on the manner in which Buccellato acquired the subject entities or the manner in which the entities acquired their assets. We are unable to locate any evidence in the record concerning these matters and, thus, the record does not support the Agency's merger determination to the extent it was premised on Subsections (2)(a) or (b).

---

[3] We note that MCL 421.41 was amended by 2016 PA 20, effective May 23, 2016. The Agency's initial merger determination was made under the former version of the statute, while its reconsidered decision was made under the current version of the statute. The amendment did not alter the text of Subsections (1) or (2), which are the relevant provisions in this case.

As the circuit court correctly noted, our Supreme Court interpreted the term "employing unit" in *Meyer v Michigan Unemployment Compensation Commission*, 311 Mich 440; 18 NW2d 886 (1945). The issue in *Meyer* concerned whether the wages paid by an entity's predecessor in interest should be included in calculating the entity's tax liability under § 44(2), which then provided for exclusion of "all remuneration paid to an individual by an employing unit for personal services within any calendar year after such individual has been paid by that employing unit remuneration equal to $3,000.00 for personal services within that year." *Id.* at 442-443. In that case, the American Screw Products Company was owned and operated by Adolph Meyer alone until September 1941, when he formed a partnership with two others. *Id*. at 442. The partnership continued the business under the same name, in the same location, and with the same employees. *Id*. The Court determined that the use of the phrase "employing unit" in former § 44(2) referred "to unity of enterprise and not to unity of ownership or management." *Id*. at 445. It therefore treated the partnership as the same employing unit because the partnership "took hold of the enterprise to carry it on (not to wind it up) and continued the employment of all employees and carried on all employing enterprises." *Id*. *Meyer* did not consider the definition of an "employing unit" that currently exists in § 40, and moreover, this case does not turn on the relationship between any of the entities at issue and their predecessors or successors in interest.

Additionally, *Iron Street Corp v Michigan Unemployment Compensation Commission*, 305 Mich 643, 654; 9 NW2d 874 (1943), involved two corporations controlled by the same person. *Id*. at 647. Arthur Evans owned 51% of the outstanding capital stock of Modern Die and Tool Company and 100% of the outstanding capital stock of Iron Street Corporation. *Id*. Unlike the situation with Buccellato and the Subway entities, both of Evans' related corporations operated out of the same building, which was owned by Iron Street Corporation. *Id*. Iron Street Company, on its own, did not employ enough workers to be deemed a liable employer. *Id*. Our Supreme Court held that "where one or more of the employing units in question is a corporation and the business conducted by either unit is relevant or incidental to the business of the other, the several employing units must be deemed to come within the classification of the affiliate clause, § 41(3)." *Id*. at 653. The so-called affiliate clause cited by the Court provided that multiple employing units owned or controlled by the same interest holder could satisfy the definition of an employer. *Id*. at 647. Because there is no longer an affiliate clause in the current version of § 41, there is no statutory basis for continuing to apply the Court's holding in *Iron Street Corp*.[4]

*Meyer* and *Iron Street Corp* are not applicable here for the reasons stated above. Accordingly, under the plain language of § 40, and based on the record before us, each of the Subway locations were owned by a separate legal entity and the Agency was not permitted to

---

[4] This is similar to a piercing of the corporate veil analysis. *Lakeview Commons v Empower Yourself*, 290 Mich App 503, 510; 802 NW2d 712 (2010) (in order to pierce the corporate veil, the following elements must be satisfied: "(1) the corporate entity is a mere instrumentality of another individual or entity, (2) the corporate entity was used to commit a wrong or fraud, and (3) there was an unjust injury or loss to the plaintiff"). There is nothing in the record before us that supports such a finding. In fact, the trial court acknowledged JCR's position of the distinct corporate status of each entity. We find nothing under the MESA, MCL 421.1 *et. seq.*, which allows for the disregarding of the corporate structure and formalities.

merge them into a single employing unit. Therefore, we must reverse the circuit court's order and reinstate the decision of the ALJ and MCAC.

## IV. CONCLUSION

The ALJ's decision conformed to the law and was supported by competent, material, and substantial evidence. *Hodge*, 497 Mich at 193. In reversing the Agency's merger determination, the ALJ correctly reasoned that neither § 40 nor § 41 authorized the Agency to convert previously determined "employers" to "employing units." The ALJ properly rejected the Agency's reliance on § 14 which refers only to the Agency's right to "make determinations with respect to whether an employing unit constitutes an employer," MCL 421.14, and thus, does not apply to the Agency's attempt to convert multiple employers into a single employing unit. In addition, the ALJ correctly observed that other sections of the statutory scheme—sections not relied on by the Agency in support of its determination—specifically provide for merging accounts of multiple employers.[5] Accordingly, we reverse the circuit court's order and reinstate the decisions of the ALJ and MCAC.[6]

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause

---

[5] The ALJ cited to MCL 421.22b(2)(a), which it properly noted does not apply to the case at hand. We further note that other provisions of the MESA distinguish an "employing unit" from its owner. See MCL 421.16 (concerning payment of refunds owed to the "individual owner of an employing unit") and MCL 421.54(b) (subjecting an "employing unit or an owner, direct, officer, or agent of an employing unit" to penalties for knowingly false statements or representations).

[6] Because we conclude that MCL 421.40 does not permit the Agency to treat the eight entities at issue as a single employing unit, we need not consider whether the Agency's determination was time-barred pursuant to § 32a(2).