BONIFAS-GORMAN LUMBER CO. *v.* UNEMPLOYMENT COM-
PENSATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—LOGGING JOBBERS AS EMPLOYEES.

Men, engaged as so-called jobbers in cutting logs and manu-
facturing forest products for plaintiff lumber company, were
in its "employment," as that term is used in the unemploy-
ment compensation act before the 1939 amendment where the
contracts directed the area to be worked on, provided for dura-
tion of contract and rate of payment on piece-work basis and
specified products desired but left matter of hours of work, fur-
nishing of tools, number and payment of assistants and cost of
workmen's compensation insurance therefor for jobber (Act
No. 1, § 42, subd. [6], Pub. Acts 1936 [Ex. Sess.], as amended
by Act No. 347, Pub. Acts 1937).

2. SAME—AMENDMENT OF STATUTE—EMPLOYMENT—LOGGING JOBBERS
AS EMPLOYEES.

Amendment of State unemployment compensation act so defining
the term "employment" as to exclude service performed in
logging or woods operations as were compensated wholly on a
piece-work or quantity basis unless such services were in-
cluded as employment under specified portion of the social
security act rendered the State statute inapplicable to claim-
ants, engaged as so-called jobbers in performing such service
upon such terms, unless they were classed as employees under
the social security act (Act No. 1, § 42, subds. [6], [7] [m],
Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub.
Acts 1939).

3. STATUTES—CONSTRUCTION—AMENDMENT.

It is a general rule of statutory construction that an amendment
is to be construed, unless a different intent is manifest, as
changing the statute amended.

4. SAME—FEDERAL STATUTES—CONSTRUCTION—COMMON LAW.

In using the terms "employee" and "employer," without
specific definition in the pertinent portion of the social security

act, Congress must be presumed to have had in mind the tests ordinarily applicable under common-law principles (49 Stat. at L. 642).

5. MASTER AND SERVANT—CONTROL—INDEPENDENT CONTRACTOR.

In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and method of accomplishing the result, he is an independent contractor, not an employee.

6. SAME—SOCIAL SECURITY ACT—INDEPENDENT CONTRACTORS.

"Employment" under the social security act is to be understood in its ordinary sense, as meaning the legal relationship of employer and employee, and individuals performing services as independent contractors are not employees (49 Stat. at L. 642).

7. CONSTITUTIONAL LAW—STATUTES—REGULATIONS—APPROVAL.

Where a legislative body has convened several times after a regulation has been promulgated pursuant to one of the statutes enacted by it without evidencing disapproval thereof, the acquiescence must be construed as an approval.

8. UNEMPLOYMENT COMPENSATION—LOGGING JOBBERS—INDEPENDENT CONTRACTORS.

Men, engaged as so-called jobbers under written contracts for cutting logs and manufacturing forest products for plaintiff lumber company, were independent contractors where work was paid for on a piece-work basis, plaintiff merely designated the area to be worked and trees to be cut but left furnishing of tools, employment of assistants, hours of work and payment for workmen's compensation insurance to jobbers; hence they were not employees of plaintiff under the social security act nor the unemployment compensation act after June 22, 1939 (49 Stat. at L. 642; Act No. 1, § 42, subd. [7] [m] [n], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub. Acts 1939).

9. SAME—WRITTEN CONTRACT—DEPARTURES—MODIFICATION.

A written contract as to performance of service for plaintiff is controlling as to nature of the relation where departures therefrom were merely occasional and modifications do not appear to have been agreed to by claimants for unemployment compensation based on alleged relation of employment thereunder (Act No. 1, § 42, subds. [6], [7] [m] [n], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 324, Pub. Acts 1939).

10. Master and Servant—Contracts—Independent Contractors—Principal and Agent.

  The test of the relationship between parties under a written contract for rendition of service is the right to control, not the fact of actual interference with the control, that makes the difference between an independent contractor and a servant or agent.

11. Costs—Public Question—Construction of Statutes—Master and Servant—Independent Contractor—Logging Jobbers—Unemployment Compensation.

  No costs are allowed in certiorari proceeding to review determination of the appeal board of the unemployment compensation commission as to whether or not persons employed as so-called logging jobbers under written contracts were independent contractors or employees entitled to benefits under the unemployment compensation act as variously amended because of the nature of the questions involved (Act No. 1, § 42, subds. [6], [7] [m] [n], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939).

Appeal from Keweenaw; Burritt (Barney H. T.), J. Submitted October 10, 1945. (Docket No. 15, Calendar No. 42,604.) Decided January 7, 1946.

Certiorari by Bonifas-Gorman Lumber Company, a Michigan corporation, to review a decision of the appeal board of Michigan Unemployment Compensation Commission that certain claimants were entitled to unemployment compensation. Judgment for defendant. Plaintiff appeals. Reversed and remanded for entry of judgment for plaintiff.

*Ivan D. Wright,* for plaintiff.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Florence Clement Booth,* Assistants Attorney General, for defendant.

CARR, J.   During the years 1938 and 1939, plaintiff corporation was engaged in lumbering operations in the counties of Houghton and Keweenaw. In connection with the carrying on of the business plaintiff entered into written contracts with various piece workers, including the individual defendants and appellees in this case. Said contracts were all in substantially the same form, some providing for the cutting of saw logs from standing timber; and others for the cutting, manufacturing and piling of merchantable pulp wood and cedar tie cuts. Exhibit 1, which is typical of the contracts in question, is set forth in the margin.*

These written undertakings were for varying periods of time, ranging from 12 to 60 days. Each described the particular land on which the services

---

* "This agreement, made and entered into this 20 day of Nov. A. D. 1939, between the Bonifas-Gorman Lumber Company, a Michigan corporation of Lake Linden, Michigan, herein called the company and Uno Ruona of .................... herein called the jobber. Eino Simila

"Witnesseth the jobber for the consideration herein stated hereby agrees to cut and manufacture all sound saw logs and tie cuts possible to be cut from timber on the following lands, and strips thereof, designated by the company, as follows:

N. E.   S. E.   Section 20   Town 57 N.   Range 31 W.   Strip No. ................ located in township of Keweenaw county, State of Michigan.

"It is understood that the company, before any work is done or performed hereunder, shall mark out, blaze or otherwise identify the particular strip or strips of land upon which the jobber is to cut and manufacture said forest products.  If said strip or strips is completed before the time limited for the performance of this contract, then the contract shall end at that date, otherwise it shall continue during the time herein limited.

"The company agrees to hire and pay for a scaler to measure and scale forest products cut hereunder, which said scale or measurement it is mutually agreed by the parties hereunder shall be final and binding, and payment hereunder shall be made by the company on the basis thereof.

"It is understood and agreed that the jobber shall cut all saw logs two inches full and in lengths of 8, 10, 12, 14 or 16 ft., that all logs shall have a ten-inch or larger top and that all logs shall be swamped clear of all brush, and both ends of logs open for inspection.

contracted for were to be performed. Before starting work on a different parcel the practice was followed of entering into a new contract.

On different dates during the first three months of 1940 said defendants and appellees, hereinafter referred to as claimants, asserting that they were during the period referred to, employees of plaintiff within the meaning of the unemployment compensation act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and by

"For each thousand feet of logs and tie cuts so manufactured and cut during the continuance of this contract, the company agrees to pay the jobber the sum of

Saw logs and tie cuts $2 per M. feet, log scale.

"It is understood and agreed that the jobber shall furnish at his own cost and expense, all necessary tools and implements used in connection with the carrying out of this contract and it is further understood and agreed that the jobber shall at all times be the sole judge of the number of hours he shall work per day, or whether he shall work at all; and the time he shall start or commence work each day, and all other details as to the carrying out of said agreement and shall be responsible to the company only for the proper results to be accomplished hereunder.

"It is also understood and agreed that the jobber may hire any number of assistants which he may deem necessary in connection with the operations under this contract at his own proper cost and expense and in the event such assistants are hired the jobber agrees to furnish them coverage with workmen's compensation insurance at his own expense.

"It is understood and agreed that this contract shall be irrevocable and shall continue in full force and effect for a period of 20 days from the date hereof, except that it may be sooner terminated by mutual consent of the parties hereto, or for such extension thereof as may be mutually agreed upon between the parties hereto indorsed hereon in writing.

"And if either party hereto shall violate any of the terms and provisions of this contract during the time it is in force, such party shall be responsible in damages to the other party as result of such violation. And in case of a violation of this agreement by the contractor hereunder while the same is in force, the company may at its option, hold as liquidated damages for such violation, any sum or sums due to the contractor hereunder at the date of such violation.

BONIFAS-GORMAN LUMBER COMPANY

"In presence of     By CHRIS ERICKSON
   CARL JACKSON         EINO SIMILA
   ELMER BONIFAS

UNO RUONA Jobber."

Act No. 324, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 8485–41 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 17.501 *et seq.*]), filed petitions for unemployment compensation in accordance with the provisions of said statute. Hearings on the petitions were duly scheduled and held. The referee sustained the contentions of the claimants, holding that the evidence justified the conclusion that the actual relationship between plaintiff and claimants was that of employer and employees. The appeal board affirmed the ruling and the circuit court of Keweenaw county, reviewing the matter on certiorari, did likewise. From such determination of the circuit court plaintiff has appealed.

Act No. 324, Pub. Acts 1939, which amended the unemployment compensation act in material respects, became effective on the 22d day of June of that year. Each claimant based his petition for compensation in part on unemployment prior to that date and in part on such unemployment subsequent thereto. Prior to the amendment of 1939, the test to be applied in determining the nature of the relationship between the parties was fixed by section 42, subd. (6) (a) (b) and (c), of the unemployment compensation act. These provisions were construed in *Acme Messenger Service Co.* v. *Unemployment Compensation Commission,* 306 Mich. 704, and in *O'Brian* v. *Unemployment Compensation Commission,* 309 Mich. 18. Plaintiff concedes that, under the provisions of the statute referred to, as construed in the decisions cited, the appeal board and the circuit court were correct in holding that claimants were entitled to compensation insofar as their petitions were based on unemployment prior to June 22, 1939. In consequence, further consideration of this part of the case is not necessary.

Act No. 324, Pub. Acts 1939, amended the unemployment compensation act in such manner as to change the test to be applied in determining the status of services performed in logging operations. The following provisions were incorporated in section 42, subd. (7), of the statute:

"The term 'employment' shall not include: * * *

"(m) Service performed in logging or woods operations, compensated wholly on a piece-work or quantity basis unless such services are included as 'employment' under title 9 of the social security act;

"(n) Any service not included as 'employment' under title 9 of the social security act."

It is obvious that by the enactment of (7) (m), above quoted, the legislature made inapplicable to the claimants in this case the provisions of section 42, subd. (6) (a) (b) and (c). Clearly, it was the intention of the legislature to exclude from the benefits of the statute persons rendering services of the character referred to unless such persons are entitled to be classed as employees under the social security act. It is a general rule of statutory construction that an amendment is to be construed, unless a different intent is manifest, as changing the statute amended. *Lawrence Baking Co.* v. *Unemployment Compensation Commission,* 308 Mich. 198, 205 (154 A. L. R. 660). As applied to the status of the claimants in this case the amendment withdrew the previously controlling test, as laid down in section 42, subd. (6) (a) (b) and (c), and substituted therefor the test suggested by section 42, subd. (7) (m), of the Michigan unemployment compensation act.

It is the claim of plaintiff here, in substance, that following said amendment claimants must be regarded as independent contractors, that they were not engaged in "employment" as the term is used in

the social security act and that, in consequence, they are not entitled to unemployment compensation for any period since June 22, 1939. On behalf of the appeal board of the unemployment compensation commission it is urged that the social security act should be construed as applicable to and including these claimants and, therefore, that they should be held entitled to compensation under the provisions of the Michigan statute.

This brings us to a consideration of the question as to the proper tests to be applied in construing the term "employment," as used in the Federal act referred to. Plaintiff insists that resort must necessarily be had to common-law principles, while counsel for appellees claim that an interpretation more inclusive than that of the common law should be accepted. Title 9, § 907 (c), of the social security act (49 Stat. at L. 642), in defining various terms used therein, declares that "The term 'employment' means any service, of whatever nature, performed within the United States by an employee for his employer." Certain exceptions are set forth but none is pertinent to the issue in this case. Counsel for appellant insists that Congress, in using the terms "employee" and "employer," without specific definition, must be presumed to have had in mind the tests ordinarily applicable under common-law principles. Such construction seems to be favored by Federal courts that have passed on the matter. Thus, in *Glenn* v. *Beard* (C. C. A.), 141 Fed. (2d) 376, it was said by Judge McAllister, speaking for the circuit court of appeals:

"According to the pertinent regulations of the commissioner of internal revenue, promulgated under title 9 of the social security act, 26 USCA, Internal Revenue Code, § 1600, *et seq*, it is provided: 'In general, if an individual is subject to the con-

trol or direction of another merely as to the result to be accomplished by the work and not as to the means and method of accomplishing the result, he is an independent contractor, not an employee.' Treasury Regulation No. 90, art. 205. The regulation is in harmony with the assumption that the act took over the term 'employee,' as the common law knew it, 'for it enumerates the generally accredited determinants in such cases, of which the most important is the putative employer's control over the employee's business.' * * *

"Employment under this statute is to be understood in its ordinary sense, as meaning the legal relationship of employer and employee; and this conclusion is fortified by the applicable regulations of the commissioner of internal revenue, which sets forth that 'the relationship between the individual who performs such services and the person for whom such services are rendered must, as to those services, be the legal relationship of employer and employee. * * * The words "employ," "employer," and "employee," as used in this article, are to be taken in their ordinary meaning. * * * Individuals performing services as independent contractors are not employees.' "

In *United States* v. *Mutual Trucking Co.* (C. C. A.), 141 Fed. (2d) 655, it was further stated by Judge Allen, after referring to the provisions of the statute:

"The statute thus recognizes the common-law definition of independent contract and excludes such relationship from the burden of the tax. (citing cases)"

After discussing the facts involved in the controversy before it, the following significant comment was made:

"Congress might have provided that such a relationship should be considered an employment, but

it has not done so. In fact the senate rejected a house amendment which would have extended the coverage in the statute beyond the employment relationship.''

Similar views were expressed by the same court in *Glenn* v. *Standard Oil Co.* (C. C. A.), 148 Fed. (2d) 51, decided March 12, 1945.

In *Jones* v. *Goodson* (C. C. A.), 121 Fed. (2d) 176, in holding that the common-law tests must be deemed applicable in determining whether the employer and employee relationship exists under the social security act, it was said:

''It must be presumed that Congress was cognizant of these well-established principles at the time of the enactment of the statute, and that if different guides were intended for ascertaining whether the relationship of employer and employee existed between the parties in the application of the statute, appropriate language would have been used to indicate such purpose. There is nothing in the act or its legislative history which indicates such an intent. Furthermore, the regulation adverted to blue prints with meticulous care the elements of the relationship in strict harmony with uniform judicial pronouncements. Congress has convened several times since the regulation was promulgated and has not evidenced its disapproval in any manner. That acquiescence must be construed as approval. *Norwegian Nitrogen Products Co.* v. *United States,* 288 U. S. 294 (53 Sup. Ct. 350, 77 L. Ed. 796); *Skelton* v. *United States* (C. C. A.), 88 Fed. (2d) 599.''

Other Federal cases of like import are *Texas Co.* v. *Higgins* (C. C. A.), 118 Fed. (2d) 636; *United States* v. *Griswold* (C. C. A.), 124 Fed. (2d) 599; *Williams* v. *United States* (C. C. A.), 126 Fed. (2d) 129; *Anglim* v. *Empire Star Mines Co.* (C. C. A.), 129 Fed. (2d) 914; *Los Angeles Athletic Club* v.

*United States,* 54 Fed. Supp. 702; *Hirsch* v. *Ro-. thensies,* 56 Fed. Supp. 92; *Emard* v. *Squire,* 58 Fed. Supp. 281; *Cannon Valley Milling Co.* v. *United States,* 59 Fed. Supp. 785; *American Oil Co.* v. *Fly* (C. C. A.), 135 Fed. (2d) 491 (147 A. L. R. 824);' *Burruss* v. *Early,* 44 Fed. Supp. 21; *W. P. Brown & Sons Lumber Co.* v. *United States,* 55 Fed. Supp. 103.

Counsel for the appeal board has called attention to the case of *United States* v. *Vogue, Inc.* (C. C. A.), 145 Fed. (2d) 609, in which the view was expressed that a more liberal test than that furnished by common-law rules should be used for the purpose of determining whether a questioned relationship constitutes "employment" under title 9 of the social security act. However, the great weight of authority, insofar as the Federal decisions are concerned, supports the holding of the circuit court of appeals of the sixth circuit in *Glenn* v. *Beard, supra,* and *United States* v. *Mutual Trucking Co., supra.* There is much force in the pertinent suggestion in several of those decisions that if Congress had intended that a test more liberal than that of the common law should be applied, it would have specifically indicated such test. The practical situation is that, unless resort is had to principles commonly recognized as controlling at common law, there is no certain and definite basis on which reliance can be placed in determining whether the "employer-employee" relationship exists for the purposes of title 9 of the social security act. It is our conclusion that Congress intended that these terms should be used in their common-law significance.

This brings us to consideration of the question of whether the claimants were, under common-law principles, independent contractors or employees in the rendition of the services in question. In *Macario* v. *Bonifas-Gorman Lumber Co.,* 291 Mich. 292, which

arose under the workmen's compensation law, the written agreement between the parties was very similar to the contracts executed by plaintiff and claimants. It was there held that the relationship existing was not that of employer and employee, but rather that Macario was an independent contractor. In the case at bar it is apparently not questioned that the contracts as written made each of the claimants an independent contractor. The trial court stated that such was his opinion and his conclusion in this regard is not challenged. Counsel for the appeal board, however, rely on the claim that in actual practice the specific provisions of the contracts were not followed. A careful reading of the testimony leads us to the conclusion that in certain instances representatives of the plaintiff, for the purpose of expediting operations, overstepped their authority as defined by the written agreements. In the main, however, the contracts were followed and the record requires the conclusion that such violations as actually occurred were merely occasional. There is nothing in the record on which to base a finding that plaintiff and claimants, or any of them, agreed to modifications of said contracts. Under such circumstances this court has held that the written contract is controlling.

In *Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385, 399 (Ann. Cas. 1918 C, 664), it was said:

"We are of the opinion that the test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. 26 Cyc. p. 1547."

Likewise, in *McCormick* v. *Sears Roebuck & Co.*, 254 Mich. 221, after determining that the specific

contract involved made plaintiff an independent contractor, it was said:

"The department of labor and industry reached a different conclusion, evidently on the theory that the defendant departed from the contract by assuming to hire and discharge workmen and to control the plaintiff in the manner of doing the work. If the contract rested in parol, the defendant's conduct would be strong evidence of the relationship of employer and employee; but it was in writing and the relationship of the parties must be measured by its terms and provisions. Moreover, actual interference or actual control is not the test of the relationship."

These decisions were followed in *Macario* v. *Bonifas-Gorman Lumber Co., supra,* where the court in holding that the provisions of the contract were controlling, said:

"The relationship of the parties here must be measured by the terms and provisions of that contract. The fact that the defendant may have actually interfered with the rights of plaintiff's decedent under the contract did not change the relationship established thereby."

See, also, *Bert Baker, Inc.,* v. *Ryce,* 301 Mich. 84; *O'Brian* v. *Unemployment Compensation Commission,* 309 Mich. 18; *Palmer* v. *Unemployment Compensation Commission,* 310 Mich. 702 (158 A. L. R. 909). These decisions are controlling in the case at bar.

It is our conclusion that the claimants, under the contracts as written and under which they rendered services to the plaintiff, were, for the reasons above stated, independent contractors and not employees during the period here involved subsequent to June 22, 1939. The determination of the trial court

that claimants are entitled to compensation during the periods in question prior to that date is affirmed. Insofar as the judgment in the circuit court held them to be entitled to compensation thereafter, said judgment is reversed. In view of the nature of the questions involved, no costs are allowed. The case is remanded to the circuit court for entry of judgment in accordance with this opinion.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.