PEOPLE v. KIRSTEIN.

1. MUNICIPAL CORPORATIONS—CITY HOUSING COMMISSION.
    City housing commission, created under provisions of State law,
    is a legal entity separate from the city, and an employee of
    the housing commission is not, by that fact alone, an em-
    ployee of the city, even though the city pays the expenses of
    the housing commission and the salaries of its employees in
    the expectation of repayment out of bond revenue and grants
    from the Federal government (CL 1948, § 125.651 et seq., as
    amended).

2. PRINCIPAL AND AGENT—DEFINITION OF AGENT.
    An agent is a business representative, whose function is to bring
    about, modify, affect, accept the performance of, or terminate
    contractual obligations between his principal and third persons.

3. MUNICIPAL CORPORATIONS—PRINCIPAL AND AGENT—EVIDENCE.
    Defendant, employee of city housing commission, who was not
    an employee of the city, held, not an agent of the city in the
    absence of evidence that he acted in a representative capacity
    for the city in any negotiations.

4. STATUTES—CONSTRUCTION—MEANING OF WORDS.
    Words in a statute setting forth the elements of a criminal of-
    fense are deemed to be used according to their ordinary and
    common meaning.

5. MASTER AND SERVANT—MEANING OF EMPLOYEE OR SERVANT.
    An employee or servant, in common usage, is one who performs
    tasks for compensation under the direction, control, or super-
    vision of another.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 42 Am Jur, Public Housing Laws § 2.
   38 Am Jur, Municipal Corporations § 596 et seq.
[2] 3 Am Jur 2d, Agency §§ 1–7.
[4] 50 Am Jur, Statutes § 238.
[5, 6] 35 Am Jur, Master and Servant §§ 2, 3.
[7] 12 Am Jur 2d, Bribery § 25.
[8] 50 Am Jur, Statutes § 407 et seq.

6. Same—Gratuitous Employee.

> The term *gratuitous employee* connotes service without pay, which is something different from the usual meaning of the term *employee.*

7. Municipal Corporations—Employee—Evidence—Request for Gratuity.

> Defendant who rendered services to city upon the request of the city manager, but was not obligated to do so, and did not ask for or receive any compensation for such services, *held*, not an agent, servant, or employee of the city within the meaning of criminal statute making it an offense for an agent, servant, or employee to ask for a gratuity in exchange for a promise to act in a certain way in respect to the business of his principal, master, or employer (CL 1948, § 750.125).

8. Criminal Law—Statutes.

> No one can be punished for doing an act unless it clearly appears the act sought to be punished comes clearly within both the spirit and letter of the law prohibiting it.

Appeal from Macomb; Deneweth (George R., Jr.), J. Submitted Division 2 March 2, 1966, at Detroit. (Docket No. 796.) Decided February 28, 1967.

George Kirstein was convicted of requesting a gratuity according to an agreement or understanding to act in a particular manner in relation to his principal's, employer's or master's business. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Frank M. Duross,* Chief Trial Lawyer, and *Max D. McCullough,* Assistant Prosecuting Attorney, for the people.

*Travis, Warren & Nayer (Harry M. Nayer* and *Richard A. Cogan,* of counsel), for defendant.

McGregor, P. J. On August 14, 1963, defendant Kirstein was convicted by a jury of violating CL

1948, § 750.125 (Stat Ann 1962 Rev § 28.320) which makes it illegal for an agent, employee or servant to accept or request a gratuity according to an agreement or understanding to act in some particular manner in relation to his principal's, employer's, or master's business.

From September, 1961, until March 20, 1963, defendant Kirstein was employed as the secretary and director of the Roseville Housing Commission, which was to build housing for senior citizens in the city of Roseville, under a Federal fund-matching program. During the summer of 1962, the Roseville city council was considering other building programs which also were to be financed with the help of Federal funds. One such proposal was for the building of a structure to house the department of public works, often referred to as DPW. On September 8, 1962, Martin J. Tropf, a local building contractor, and George Leonard went to the private office of defendant Kirstein. At this meeting, Tropf purchased some cement forms from defendant Kirstein and engaged with the defendant in a conversation concerning the contracting business in general. Tropf testified at defendant Kirstein's trial that the defendant said during this conversation that he could "work the angles" so that Tropf could get the contract for the construction of the DPW building and that he would furnish Tropf with the plans and specifications. Tropf also testified that the defendant said he would like to get $37,000 or $38,000 to play around with. George Leonard, on the other hand, testified that while he did not hear everything that was said between Tropf and defendant Kirstein, he could not recall anything being said about the proposed DPW building.

Tropf also testified that within 2 or 3 weeks after the September 8th meeting, a copy of the plans and

specifications for the DPW building was left at Tropf's office. On January 25, 1963, Tropf took the plans and specifications to the Michigan State police in Warren, Michigan, where they were examined, photographed, marked by the police, and returned to Mr. Tropf. These plans then remained in Mr. Tropf's office until February 7, 1963, when defendant Kirstein came to pick them up.

On the stand, defendant Kirstein denied discussing the DPW job with Tropf at the September 8, 1962, meeting. Defendant also denied ever telling Tropf that he wanted some $30,000 or $40,000 to play around with, or that he had ever asked Tropf for any money for getting the DPW contract for Tropf.

Upon the conclusion of the prosecution's case, the defendant moved for dismissal on the grounds that the prosecution had failed to prove all of the component parts of the alleged crime. After the jury convicted the defendant, he made a motion for new trial on the grounds, among others, that there was no evidence that the defendant was an agent, employee, or servant of the city of Roseville at the time of the alleged crime. Defendant brings this appeal from denial by the trial court of that motion for a new trial.

The relevant portions of the statute which the defendant was charged with violating read as follows:

"It shall be unlawful * * * for an agent, employee or servant to request or accept for himself or another any * * * promise to make any commission, gift, or gratuity to himself or another * * * according to any agreement or understanding between him and any other person to the effect that he shall act in any particular manner in relation to his principal's, employer's, or master's business." CL 1948, § 750.125 (Stat Ann 1962 Rev § 28.320).

The issue presented to this Court for resolution is whether or not there is any evidence in the record to support the plaintiff's contention that defendant Kirstein was an employee of the city of Roseville.

The undisputed evidence is that the Roseville Housing Commission was an independent agency, not provided for in the city charter, but created under the provisions of State law. (CL 1948, § 125-.651 *et seq.,* as amended [Stat Ann 1958 Rev § 5.3011 *et seq.*].) The members of the housing commission were appointed by the mayor and city manager, but not the city council. The housing commission had nothing to do with the operations of the city government. As housing director and secretary to the housing commission, defendant Kirstein was responsible solely to the commission. His duties were not delegated by the city or its council, and the city council had not the power to hire, fire, supervise, or otherwise direct defendant Kirstein in the performance of his duties for the housing commission. William Ward, the city attorney, testified that in his opinion the defendant was an employee of the housing commission and not an employee of the city of Roseville.

Defendant Kirstein was, however, paid by the checks of and from the funds of the city of Roseville during his employment as housing director. The city manager testified that such payments of housing commission expenses by the city of Roseville were considered to be loans or advances from the city which would be paid back to the city when funds were provided by the Federal government. The obligation of repayment is established by CL 1948, § 125.656 (Stat Ann 1958 Rev § 5.3016) which requires the housing commission to reimburse the city out of funds from the sale of revenue bonds.

The resolution of the issue in this case is greatly simplified by the following concessions made in the people's brief, as follows:

"It is fair to conclude that his duties did not include doing any work in regard to other municipal building programs, and more specifically did not include any obligation or necessity to help prepare the application for Federal funds in regard to the prepared DPW building."

Since the people are willing to concede that the housing commission is an entity legally distinct from the city, this Court will assume that defendant Kirstein's employment activities with the housing commission did not make him an employee of the city of Roseville. The people contend, however, that defendant Kirstein was a gratuitous employee of the city of Roseville by virtue of assistance rendered to the city manager in making application for Federal funds to assist in the construction of the DPW building.

The city manager testified that on October 8, 1962, the Roseville city council authorized him to apply for a Federal loan for the construction of the DPW building. He stated that, about a week and a half later, he asked the defendant to help with the preparation of this application. He made no consultation with the defendant on any other city project. The city manager testified that defendant Kirstein assisted him in determining the cost estimates for various aspects of the proposed construction work, based on the plans for a DPW building drawn by an architect. Defendant Kirstein neither asked for nor received any compensation for his assistance. He was not required as part of his housing commission position to render this or any other assistance to the Roseville city manager. The city manager also testified that some time after the

October 8, 1962, council meeting, he gave the plans
to the defendant Kirstein and former Mayor Water-
man to take to Chicago and deliver to the proper
Federal agency. Former Mayor Waterman testi-
fied that the expenses of this trip were paid by the
housing commission, since he and defendant Kir-
stein also transacted some business for the housing
commission on this trip.

Was the defendant an agent, employee, or servant
of the city of Roseville within the meaning of these
terms, as used in the statute?

Was the defendant an agent for the city?

"The characteristic of the agent is that he is a
business representative. His function is to bring
about, modify, affect, accept performance of, or
terminate contractual obligations between his prin-
cipal and third persons." *Saums* v. *Parfet* (1935),
270 Mich 165, 172, quoting 1 Mechem on Agency
(2d ed), p 21.

Since there are no allegations or evidence that de-
fendant Kirstein acted in a representative capacity
in any negotiations for the city of Roseville, it can-
not be said that he was an agent.

Was defendant Kirstein an employee or servant
or "gratuitous" employee of the city of Roseville?
In answering this question, these terms are deemed
to be used in the statutory context in their ordinary
and common usage. *People* v. *Mankel* (1964), 373
Mich 509. The term "servant" is defined in Web-
ster's Third New International Dictionary, page
2075, as: "a person in the employ and subject to
the direction of an individual or company; a wage
earning employee." This same authority (p 743)
defines "employee" as: "one employed by another
usually in a position below the executive level and
usually for wages. In labor relations, any worker
who is under wages or salary to an employer," and

"employment" as: "activity in which one engages and employs his time and energies, * * * as (1) work (as customary trade, craft, service or vocation) in which one's labor or services are paid for by an employer, * * * (2) temporary or occasional work or service for pay." In common usage, therefore, an employee or servant is one who performs tasks for compensation under the direction, control, or supervision of another. *Moore* v. *Fleischman Yeast Co.* (1934), 268 Mich 668, 671.

The term "gratuitous employee," which the prosecutor applied to defendant Kirstein in the people's brief and on oral argument, does not have any legal significance other than to connote service without pay, which is something different from the usual meaning of the term "employee."

One of the essential elements of the crime charged is therefore missing because defendant Kirstein was never an agent, employee, or servant of the party, the city of Roseville, whose business he was alleged to have agreed to influence for a bribe.

"It is a well-settled rule of law that no one can be punished for doing an act unless it clearly appears the act sought to be punished comes clearly within both the spirit and letter of the law prohibiting it. * * *

"Defendant ought not to be convicted unless he is clearly and unequivocally within the language of a statute which by its terms covers his case." *People* v. *Goulding* (1936), 275 Mich 353, 359.

Since defendant Kirstein's case does not clearly come within the ambit of the statutory prohibition, the judgment of the circuit court is reversed and the case is remanded for an order of dismissal.

HOLBROOK and QUINN, JJ., concurred.