PEOPLE v KEEN

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—INTOXICATION TESTS—CRIMES TO
   WHICH APPLICABLE—STATUTES—TESTING PROCEDURE—RIGHT OF
   REFUSAL—APPLICABLE CRIMES.

   The statute which provides for the taking of intoxication tests
   applies only to charges of driving under the influence of intoxi-
   cating liquor or driving while impaired and the testing proce-
   dure and the delineation of the right of refusal or consent
   relates only to those crimes; however, there are reasons sepa-
   rate and distinct from the statute which allow the taking of
   intoxication tests and the admission of their results in evidence
   as to crimes other than driving under the influence of intoxicat-
   ing liquor or driving while impaired (MCLA 257.625a[1]).

2. CRIMINAL LAW—EVIDENCE—BREATHALYZER TEST—CONSTITUTIONAL
   LAW—SELF-INCRIMINATION.

   The results of a Breathalyzer test are admissible in evidence and
   not violative of any one of various constitutional guaranties
   because the procedure used is commonly recognized and cannot
   be said to be an offense against conscience or sense of justice
   and the kind of evidence obtained by such procedures cannot in
   its nature be self-incriminating in the sense that a verbal
   declaration can be; notwithstanding an individual's consent or
   lack thereof, a Breathalyzer test like a blood test can be
   compelled without derogation of constitutional rights.

3. CRIMINAL LAW—EVIDENCE—BREATHALYZER TEST—RESULTS—ADMIS-
   SIBILITY—VALID ARREST.

   A defendant's consent or refusal to submit to a Breathalyzer test

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 259, 260,
332–334.

Requiring submission to physical examination or test as violation of
constitutional rights. 25 ALR2d 1407.

[5] 73 Am Jur 2d, Statutes §§ 194, 195.

[7] 7 Am Jur 2d, Automobiles and Highway Traffic § 317.

is irrelevant to the admission of the results of the test where the test is administered following a valid arrest.

4. CRIMINAL LAW—EVIDENCE—BEST EVIDENCE—BREATHALYZER TEST—RESULTS—ADMISSIBILITY.

The admission into evidence of Breathalyzer test results on blood-alcohol content is legally proper and societally necessary in balancing risks to individual liberty and the needs of public safety; the subject test results are the best evidence of intoxication, which evidence may benefit the defendant as well as the prosecution.

CONCURRENCE IN PART, DISSENT IN PART, BY T. M. BURNS, J.

5. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

*Appellate courts must search for and give effect to the intent expressed by the Legislature in its enactment of the law where a statute's meaning is ambiguous.*

6. HOMICIDE—MANSLAUGHTER—EVIDENCE—BREATHALYZER TESTS—RESULTS—ADMISSIBILITY—PRESUMPTIONS.

*Neither Breathalyzer test results nor the statutory presumptions arising from those results are admissible in evidence in a prosecution for manslaughter; the Legislature intended that the admissibility of the tests and the corresponding statutory presumptions be limited to drunk-driving cases (MCLA 257.625a).*

7. CRIMINAL LAW—EVIDENCE—DRIVING RECORDS—MISDEMEANORS—WITNESSES—IMPEACHMENT.

A defendant's past driving record and prior misdemeanor convictions may not be used by the prosecution solely for impeachment purposes.

Appeal from Cass, James E. Hoff, J. Submitted Division 3 June 4, 1974, at Grand Rapids. (Docket No. 18176.) Decided October 9, 1974. Leave to appeal granted; 393 Mich 787.

Jimmy E. Keen was charged with manslaughter. Motions to suppress the results of a breath test and *in limine* to suppress evidence or cross-examination with respect to defendant's past driving record and prior misdemeanor convictions denied.

Defendant appeals by leave granted. Affirmed in part, reversed in part.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael E. Dodge,* Prosecuting Attorney, for the people.

*Phillipson & Boezeman,* for defendant.

Before: Holbrook, P. J., and T. M. Burns and R. L. Smith,* JJ.

Holbrook, P. J. *(affirming in part, reversing in part).* This Court finds that MCLA 257.625a(1); MSA 9.2325(1)(1), as amended, applies only to charges of driving while under the influence of intoxicating liquor or driving while impaired. The testing procedure and the delineation of the right of refusal or consent relates only to those crimes. As such, consent to testing for blood alcohol content is irrelevant under charges for other crimes. As to crimes other than DUIL or driving while impaired, there are reasons separate and distinct from the statute which allow the taking of intoxication tests and the admission of their results.[1]

In *Breithaupt v Abram,* 352 US 432; 77 S Ct 408; 1 L Ed 2d 448 (1957), the Supreme Court determined that a blood test taken from an unconscious defendant (charged with involuntary manslaughter) was not a denial of due process of law and was not shocking to the conscience or brutal as was the stomach pumping procedure used in *Rochin v California,* 342 US 165; 72 S Ct 205; 96 L

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] *See, generally,* 7 Am Jur 2d, Automobiles and Highway Traffic, § 338, p 884; McCormick, Evidence (2d ed), § 209, pp 511–513; 8 Wigmore on Evidence, § 2265, pp 391–394 (McNaughton rev, 1961).

Ed 183; 25 ALR2d 1396 (1952). In *Breithaupt,* Mr. Justice Clark wrote:

"To be sure, the driver here was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test as administered here would not be considered offensive by even the most delicate." 352 US 432, 435, 436; 77 S Ct 408, 410; 1 L Ed 2d 448, 451.

In *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966), a blood sample had been withdrawn from the defendant over his objection. Before the Supreme Court, he contended that the withdrawal of the blood and the admission of the analysis in evidence denied him due process of law, was against the privilege of self-incrimination, that he was denied his US Const, Am VI right to assistance of counsel, and that the evidence was the product of an unlawful search and seizure. All of these claims were dismissed in the opinion of Mr. Justice Brennan. We find that the result of the Breathalyzer test is admissible.[2]

"Whether any one of various constitutional guaranties is violated by the taking of bodily fluids or materials for analysis or comparison, has, for the most part, been dependent upon the degree of offense to conscience or sense of justice represented, in the circumstances, by the procedure followed. All of the cases expressly or

---

[2] As early as 1942 it was commonly accepted that the furnishing of samples of body fluids or substances for analysis did not derogate the privilege against self-incrimination. Model Code of Evidence rule 205 (1942).

On the basis that there is no testimonial compulsion, *inter alia,* other types of evidence have been held to be admissible. *See United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967); *Gilbert v California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967); *United States v Dionisio,* 410 US 1; 93 S Ct 764; 35 L Ed 2d 67 (1973); and *Cupp v Murphy,* 412 US 291; 93 S Ct 2000, 36 L Ed 2d 900 (1973).

impliedly assume that the kind of evidence obtained by such procedures cannot in its nature be self-incriminatory in the sense that a verbal declaration can be." Anno: *Physical Examination or Exhibition of, or Tests Upon, Suspect or Accused, as Violating Rights Guaranteed by Federal Constitution—Federal Cases,* 16 L Ed 2d 1332, 1338.[3]

The procedure used in the present case is commonly recognized and cannot be said to be an offense against conscience or senses of justice.

In *State v Driver,* 59 Wis 2d 35; 207 NW2d 850 (1973), the defendant conceded that he could have been compelled to take a blood test but argued that the use of a Breathalyzer was impermissible as that test required him to actively participate by blowing into the apparatus. The Supreme Court of Wisconsin wrote:

"As in *Schmerber,* the results of the test are not based on any:

" '[T]estimonial capacities * * * ; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone.' (384 US 765; 86 S Ct 1832; 16 L Ed 2d 916.)

"While the breathalyzer test is expedited by the volitional expulsion of a large quantity of inhaled breath, the results of that test will not be colored, as might a testimonial utterance, by coercion or psychological pressures. As was well said by the lyricist of Lerner and Loewe's, 'My Fair Lady,' respiration is typified as, ' * * * second nature to me now. Like breathing out and breathing in.' " 59 Wis 2d 41; 207 NW2d 852.[4]

---

[3] Supplemented by Anno, 22 L Ed 2d 909.

[4] *Cf.* McCormick, Evidence (2d ed), § 209, p 512, wherein it is stated that:

"The breath test has the advantage of convenience. It does not require a physician or medical technician to extract a sample, as does the blood test. It may be administered by a trained policeman. Moreover, it is least likely to arouse objection, and thus to raise doubtful questions of privilege."

And 7 Am Jur 2d, *ante,* § 332, p 875.

Prior to the enactment of 1964 PA 104 which extended the provi-

In *People v Gebarowski,* 47 Mich App 379, 383–384; 209 NW2d 543, 545 (1973), this Court stated:

"Defendant has no right to refuse to take a breathalyzer test. That is, the state can compel the giving of a breathalyzer test without the benefit of any alternative procedure.

"In *Schmerber v California,* 384 US 757, 761, 765; 86 S Ct 1826, 1831–1833; 16 L Ed 2d 908, 914, 916–917 (1966), the Supreme Court stated:

" 'It could not be denied that in requiring petitioner to submit to the withdrawal and chemical analysis of his blood the state compelled him to submit to an attempt to discover evidence that might be used to prosecute him for a criminal offense. He submitted only after the police officer rejected his objection and directed the physician to proceed. The officer's direction to the physician to administer the test over petitioner's objection constituted compulsion for the purposes of the privilege. The critical question, then, is whether petitioner was thus compelled "to be a witness against himself."

*       *       *

" 'In the present case, however, no such problem of application is presented. Not even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend on chemical analysis and on that alone. Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds.'

---

sion to the chemical analysis of urine, breath, or other bodily substances in addition to chemical analysis of an individual's blood, *People v Miller,* 357 Mich 400; 98 NW2d 524 (1959), held that urinalysis as a test for evidence of intoxication was properly admissible.

"Clearly, a defendant can be compelled or coerced into submitting to a breathalyzer test without violating his Fifth Amendment right against self-incrimination."

Thus, notwithstanding an individual's consent or lack thereof, it would appear that a Breathalyzer test, like a blood test, could be compelled without derogation of constitutional rights and should be admissible.

The South Dakota case of *State v Spry*, — SD —; 207 NW2d 504 (1973), is informative. In that case the defendant was tried and found guilty by a jury of second-degree manslaughter. The defendant had been involved in a head-on collision which resulted in the death of two persons. The defendant was visited about an hour and a half after the accident by two police officers at the hospital. The defendant was placed under arrest for driving while intoxicated, after an officer detected alcohol on his breath. A blood sample, to which defendant consented, was taken. On appeal, defendant contended, *inter alia,* that the trial court erred in denying his motion to suppress the results of the blood test.

"It appears that after the defendant was placed under arrest for driving while intoxicated, the arresting officer asked permission of him to have the blood sample withdrawn. The defendant was advised that he had the right to refuse to submit to the test and that he could lose his driver's license for a year if he so refused. The defendant was not advised that the driver of the other car had died as a result of the accident, although it is undisputed that the police officer was aware of that fact." — SD —; 207 NW2d at 507.

On this basis the defendant argued that the failure of the police officer to inform him of a person's death invalidated any consent given to submit to a blood test and that without consent thereto, the

test results were inadmissible. This contention the Court dismissed relying upon SDCL 32-23-10, which is comparable to MCLA 257.625a(4); MSA 9.2325(1)(4) and MCLA 257.625d; MSA 9.2325(4). The Court said further:

"We are not concerned with the question of 'implied consent'. Spry gave an actual consent. *State v Werlinger,* 84 SD 282; 170 NW2d 470 (1969).

"Aside from all that, however, we hold that a defendant's consent or refusal is irrelevant to the admission of the results of the blood test if the test is taken pursuant to a valid arrest. *Cf. Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966). *Holland v Parker,* 354 F Supp 196 (D DC, 1973)." — SD —; 207 NW2d at 508.

We find that evidence of the analysis in the instant case is properly admissible as there was probable cause for arrest.

"It is time to realize that mere drunkenness, however 'sinful,' warrants no criminal punishment unless it manifests or results in dangerous threats to public safety.

"With the acceptance of alcoholism as a disease which requires treatment rather than punishment, there is a growing tendency to consider drunkenness as a medical problem. However, since the emphasis of the law is on the dangerousness of the drunkenness offender as well as his condition under the influence of intoxicating liquors, the problem is essentially a social one which represents conflicts between society and the individual. Medical science, of course, has much to offer in the improvement of the law and its administration. However, the point is to establish a sound basis upon which medicine and the law can work harmoniously in the framework of the present legal system. Therefore, while endeavors are needed to explore the possibilities and methods of treating the recognized alcoholic, the court must continue to play the value weighing function of balancing the risks to individual liberty and

public safety." Tao, *Drunkenness and Criminal Law,* 13 Wayne L Rev 530, 548 (1967).

In balancing risks to individual liberty and the needs of public safety,[5] it is our opinion that the admission of the Breathalyzer test results on blood alcohol content into evidence is legally proper and societally necessary. Furthermore, the subject test results are the best evidence of intoxication, which evidence may benefit the defendant as well as the prosecution.

We rule that the cases of *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), and *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), are applicable to the present case. As this is an interlocutory appeal, we are not faced with the question of retroactivity of these two cases.

The trial court will be governed by these two cases concerning the admissibility of defendant's convictions on other charges solely for impeachment purposes.

We affirm the trial court's decision concerning the admissibility of the Breathalyzer test in accord with this opinion; we reverse as to the ruling on admissibility of defendant's convictions on other charges solely for impeachment purposes.

R. L. SMITH, J., concurred.

T. M. BURNS, J. *(for reversal).* This is an interlocutory appeal granted by this Court on October 22, 1973. Defendant has been charged with the crime of manslaughter[1] as the result of an automobile accident that occurred on March 10, 1973. The crash occurred on M-51, one-tenth mile south of

[5] *Cf.* Selzer, Psychiatry for Lawyers Handbook, ch 2, pp 42–85 (4th ed, 1967).

[1] MCLA 750.321; MSA 28.553.

M-62 in Pokagon Township, Cass County, Michigan. It is alleged that the defendant was under the influence of intoxicating liquor and did unlawfully operate his motor vehicle in the wrong southbound lane of M-51, resulting in the death of one Harry Moore.

Immediately after the accident, defendant, being injured, was taken to Lee Memorial Hospital. At the hospital, officers placed defendant under arrest for driving while under the influence and requested that he take a breath test to determine his blood-alcohol content. Before making a decision in this matter, defendant asked for the advice of his attorney. The attorney arrived and was informed that the defendant was arrested for driving while under the influence and that the sheriff's department had requested defendant to take a breath test. After consulting with counsel, defendant consented to take the breath test.

At the preliminary examination held on May 17, 1973, the deputy who had administered the test testified that the result showed a .14 percent blood-alcohol content.

The defendant, age 25, has had four lifetime driving offenses, three in 1966 and one in 1969; he was also involved in an accident in 1966 and two more accidents in 1969. In addition, he was convicted of drunk and disorderly twice in 1971. He has no other criminal record.

On August 3, 1973, defendant moved to suppress the results of the breath test. On August 17, 1973, defendant also moved *in limine* to suppress evidence or cross-examination with respect to defendant's driving record and cross-examine of defendant with respect to alcohol in past offenses, all of which were misdemeanors. On August 20, 1973, the trial court denied both motions.

Defendant first argues that the results of a Breathalyzer test cannot be admitted into evidence against him in this criminal prosecution for manslaughter. Defendant contends that MCLA 257.625(a); MSA 9.2325(1) clearly restricts the results of a Breathalyzer test to use in prosecutions for driving while under the influence of intoxicating liquors, MCLA 257.625; MSA 9.2325, hereinafter referred to as DUIL, or driving while impaired, MCLA 257.625(b); MSA 9.2325(2), hereinafter referred to as DI.

Prior to 1967, MCLA 257.625(a)(1); MSA 9.2325(1)(1) read in pertinent part as follows:

"In any criminal prosecution *relating to* driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in such person's blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath or other bodily substance, shall be admissible and shall give rise to the following presumptions * * * ." (Emphasis added.)

1967 PA 253, approved July 19, 1967, amended MCLA 257.625(a)(1); MSA 9.2325(1)(1) to read as follows:

"In any criminal prosecution *for* driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in such person's blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath or saliva shall be admissible into evidence and shall give rise to the following presumptions * * * ." (Emphasis added.)

Plaintiff contends that the instant case is controlled by *People v Holmes,* 2 Mich App 283; 139 NW2d 771 (1966), where the results of a Breathalyzer test were admitted into evidence in a trial for manslaughter. However, I do not consider

*Holmes* controlling for two reasons. First, the question of the admissibility of the Breathalyzer test was neither raised nor decided by the Court. Second, the decision in *Holmes* was handed down in 1966, prior to the time the statute in question was altered by amendment.

In my independent research, I have been unable to discover any other Michigan authority besides *Holmes* which allowed Breathalyzer tests into evidence in other than DUIL or DI prosecutions. Indeed, on several occasions, this Court has expressly declined to consider the question of the Breathalyzer's admissibility in other proceedings.[2]

In its opinion, the trial court took the position that the presumption set forth in the statute could not be charged to the jury in some crime other than DUIL, but that the results of the chemical tests were admissible in prosecutions for crimes other than DUIL. In support of its position, the trial court cited and relied on *People v Manning,* 7 AD2d 1008; 184 NYS2d 240 (1959). However, the Breathalyzer statute in that jurisdiction differs somewhat from our statute as amended, and I feel that under these circumstances, the decision of an intermediate court of another jurisdiction will be of little help in deciding the present case.

Where a statute's meaning is ambiguous, appellate courts must search for and give effect to the intent expressed by the Legislature in its enactment of the law. *People v McFarlin,* 389 Mich 557, 564; 208 NW2d 504 (1973). To this end, various principles of construction have been formulated by the courts: first, penal statutes are generally to be

---

[2] *See Dennis v Jakeway,* 53 Mich App 68, 75; 218 NW2d 389 (1974); *Rose v Paper Mills Trucking Co,* 47 Mich App 1, 6; 209 NW2d 305 (1973); *O'Loughlin v Detroit & Mackinac Railway Co,* 22 Mich App 146, 150; 177 NW2d 430 (1970); *Gard v Michigan Produce Haulers,* 20 Mich App 402; 174 NW2d 73 (1969).

strictly construed in favor of the defendant;[3] second, the Legislature is presumed to know the construction placed on statutes by courts;[4] third, "[w]e feel that the better policy is that in construing an amendment to a statute a court should ascertain and give effect to the intention of the Legislature and in doing so a change in phraseology from that of the act as it stood before amendment raises a presumption that a change of meaning was also intended. *Lawrence Baking Co v Unemployment Compensation Commission*, 308 Mich 198; 13 NW2d 260 (1944); *Bonifas-Gorman Lumber Co v Unemployment Compensation Commission*, 313 Mich 363; 21 NW2d 163 (1946)". *Michigan Transportation Co v Secretary of State*, 41 Mich App 654, 665; 201 NW2d 83 (1972).

Applying the principles enunciated above to the statute in question, I am convinced that MCLA 257.625(a); MSA 9.2325(1) applies only to criminal prosecutions for DUIL or DI. In my opinion, it is quite clear that the Legislature intended, through the enactment of the 1967 amendment changing the wording of the statute from "relating to" DUIL to "for" DUIL, that the admissibility of Breathalyzer tests and the corresponding statutory presumptions be limited to drunk-driving cases. It is my opinion that the Legislature felt its intent violated by *Holmes* and, therefore, altered the statute in 1967 to remedy the situation.

My opinion is further reinforced by another provision of the statute. Section 3 of MCLA 257.625(a); MSA 9.2325(1) provides that:

---

[3] *Jads, Inc v Detroit*, 41 Mich App 693, 696; 200 NW2d 715 (1972); *People v Kirstein*, 6 Mich App 107; 148 NW2d 539 (1967); *People v Brown Brothers Equipment Co, Inc*, 3 Mich App 618; 143 NW2d 155 (1966) *aff'd* 379 Mich 363; 151 NW2d 824 (1967).

[4] *Ray v Transamerica Insurance Co*, 46 Mich App 647, 652; 208 NW2d 610 (1973), and cases cited therein.

"A person *charged* with driving a vehicle while under the influence of intoxicating liquor who takes a chemical test administered at the request of a police officer as provided in paragraph (1) and (2) hereof, shall be informed that he will be given a reasonable opportunity to have a person of his own choosing administer one of the chemical tests as provided in this section within a reasonable time after his detention, and the results of such test shall be admissible and shall be considered with other competent evidence in determining the innocence or guilt of the defendant. Any person *charged* with driving a vehicle while under the influence of intoxicating liquor shall be informed that he has the right to demand that one of the tests provided for in paragraph (1) shall be given him, and the results of such test shall be admissible and shall be considered with other competent evidence in determining the innocence or guilt of the defendant." (Emphasis added.)

Thus, it is clear that the entire statutory scheme is aimed solely at DUIL and DI prosecutions, and not prosecutions for manslaughter.

It is my opinion, therefore, that neither Breathalyzer tests results nor the statutory presumptions arising from those results are admissible into evidence in a prosecution for manslaughter.

Having resolved the issue in defendant's favor, it is not necessary to consider the waiver question raised by the defendant.

Defendant's second and final contention is that the trial court abused its discretion in holding as admissible for impeachment purposes defendant's past driving record and prior misdemeanor convictions.

In *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), our Supreme Court made it clear that a change in regard to our rule on impeachment by conviction was on the horizon. Several members of the Court expressed their opinions regarding the appropriateness of permitting the impeachment of

a defendant by use of his prior convictions. While the method of preventing such use varied among the justices,[5] the increasing judicial concern over the improper use of convictions as impeachment evidence was apparent.

It did not take our Supreme Court very long to take the first step in eliminating the use of prior convictions to attack a defendant's credibility. In *People v Renno,* 392 Mich 45, 55; 219 NW2d 422 (1974), a decision handed down only two months after *Jackson* was decided, the Supreme Court struck its first blow towards totally abolishing the use of prior convictions for impeachment purposes, when it stated:

"We do not hesitate in this case to prohibit the further use of municipal ordinance or misdemeanor convictions used by the prosecution *solely for impeachment purposes.* This type of conviction was never intended by our Legislature to fall within the confines of MCLA 600.2158; MSA 27A.2158, or MCLA 600.2159; MSA 27A.2159. This is affirmatively shown by the legislative history of these statutes. It is time that this Court brings our current interpretation of these statutes back in line with their original purposes."

In accordance with *Renno,* I would now hold that defendant's past driving record and prior

[5] Justice Swainson and Chief Justice T. M. Kavanagh were of the opinion that the Court should decisionally adopt a rule barring the impeachment of the credibility of a criminal defendant through the use of his prior convictions in all cases where the defendant does not introduce evidence to affirmatively support his credibility.

Justices T. G. Kavanagh and Levin agreed that a witness's past conviction record should not be held admissible for the purpose of impeaching his credibility but felt that such change should be effected by promulgating a court rule which would give the bench and bar a chance to accommodate to this prospective change in procedure.

Justice Williams said that with the exception of conviction for perjury or some like crime, there is no reason to introduce a defendant's past conviction record for the purpose of impeaching his credibility.

misdemeanor convictions may not be used by the
prosecution solely for impeachment purposes. I
would do so without labelling the trial court's
action an abuse of discretion since the trial court
passed its judgment without the benefit of the rule
recently laid down in *Renno.*

I would, therefore, vote to reverse and remand
for further proceedings consistent with this opin-
ion.