Royce Lavelle BOUNDS,
Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Nov. 13, 1975.

Certiorari Denied by Supreme Court
Feb. 9, 1976.

James D. Todd, Jackson, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, Howard F. Douglas, Asst. Dist. Atty. Gen., Jackson, for defendant in error.

WALKER, Presiding Judge.

OPINION

The defendant below, Royce Lavelle Bounds, appeals in error from his conviction of second degree murder with an automobile and his sentence to 15 years in the penitentiary.

The state's evidence showed that on August 24, 1974, at about 8:00 p. m., the defendant was proceeding south on Highway 45 By Pass in the City of Jackson; that he passed another car at 70 to 80 miles per hour and struck the walkway of a bridge on his right, then crossed the roadway and the median strip into the opposite lanes of traffic and collided with the front of the car in which Debrah Jones was a passenger, resulting in her death. The defendant's car

continued off the highway, over a fence, and came to rest in Chester Street.

The defendant was injured in the accident. When officers arrived they found that he and his car smelled of alcohol. One officer felt his pulse to see if he was alive. Another witness did not smell alcohol. The officers took the defendant to the hospital where, at the request of one of them, a blood sample was taken from him which showed .24 percent ethanol.

Testifying in his own behalf, the defendant said that he was driving an automobile with three new tires and an old one on the right front wheel; that he passed another car at 50 to 55 miles per hour and attempted to slow down, at which time his right front tire blew out, pulling his car to the right; that he jerked the car to the left, skidded and hit the bridge; that the next thing he remembers was waking at the hospital.

He also said that about 1:00 p. m. that day he went to a tavern and drank four or five beers in a period of two or two and a half hours, then went home and cleaned up, after which he drank another quart of beer before going to see his former employer at 6:30 or 7:00 p. m. By his testimony he was not intoxicated, was driving properly and the collision was caused by a blowout. By his account he was guilty of no culpable negligence.

The wrecker driver found both front tires deflated and holes in the right one when he removed the defendant's car from the scene.

■ In challenging the admissibility of the results of the blood test over his objection, the defendant insists that he did not consent to it and that, in fact, he was incapable of consenting within the meaning of TCA 59–1045.

The record shows (1) a witness said the defendant was limber and unconscious at the scene; (2) officers had to hold him up as they drove him to the hospital and he was carried in on a stretcher; (3) he was injured in the collision; (4) officers said he was not

mentally alert. Further, no one at any time asked for his consent to the test.

The state argues that the "implied consent" law provides one way, but not the exclusive way, to take one's blood and introduce it into evidence. It cites *Fee v. State,* Tenn.Cr.App., 497 S.W.2d 748, in which this court considered the place where a specimen had to be sent for analysis. We held that an analysis at a local hospital was valid even though the statute says it should be sent to the state examiner. To the same effect is *Bunch v. State,* Tenn., 499 S.W.2d 1, but these cases do not support a broader construction on the consent requirement.

The state also says that *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, and a line of state cases support its view that the statutory procedures provide one way but not the exclusive method of showing results of a blood alcohol test. It contends that the implied consent law only places administrative sanctions upon the refusal to have a blood alcohol test administered. For this view see *People v. Keen,* 56 Mich.App. 84, 223 N.W.2d 700 (1974); *Strong v. State,* 231 Ga. 514, 202 S.E.2d 428 (1973); *Scales v. State,* 64 Wis.2d 485, 219 N.W.2d 286 (1974) (implied consent law does not limit the right to search incident to arrest).

TCA 59–1045 authorizes blood to be taken from an unconscious person or one incapable of refusal but the results shall not be used against him in evidence *in any court* or before any regulatory body without the consent of the person so tested. (emphasis ours) This statute covers the test introduced here and the results were improperly admitted. We hold that the introduction of this evidence constituted prejudicial error. We cannot say that aside from it the jury would have convicted the defendant anyway. For this reason the case is reversed and remanded for a new trial.

Although the case must be reversed, we have examined the other assignments of error and overrule them.

■ In his attack on the admissibility of the blood test, the defendant contends that

**162**

TCA 59–1046 limits its introduction to violations of Chapter 10 of Title 59, Tennessee Code Annotated, and does not apply to homicide cases. He cites cases from other jurisdictions holding the presumption of intoxication in their implied consent statutes does not apply in motor vehicle homicide prosecutions.

Our statutes allow both the results of the blood test and the presumption into evidence regardless of whether or not the defendant is indicted for driving while intoxicated. TCA 59–1049 provides that the certificate is admissible "in any court, in any criminal proceeding, as evidence of the facts therein stated, and of the results of such test." Without the presumption the blood test results would have little significance. This assignment is without merit.

The defendant also attacks the results of the blood test saying that no qualified person was present to testify about the procurement of the blood.

Evidence admitted without objection showed that the blood was taken by Miss Donna Jones and that she was an assistant laboratory technician at Jackson-Madison County Hospital. Miss Jones did not testify and it does not appear from the record whether or not she was under subpoena. Under *State v. Robbins,* Tenn., 512 S.W.2d 265 (1974), this assignment is overruled.

We find no merit in the contention that the trial judge improperly instructed the jury orally. In his main charge he correctly instructed the jury on the range of punishment. When it returned a verdict of guilty of second degree murder without fixing the punishment, he directed them to return and his oral instructions had to do with the form of the verdict or method of rendering a sentence. This is permissible.

Reversed and remanded for a new trial.

RUSSELL and DUNCAN, JJ., concur.